FILED

Jul 27 2016, 7:07 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Janet L. Manship
Greenfield, Indiana

ATTORNEY FOR APPELLEE

Russell M. Webb, Jr.
Plainfield, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kevin R. Koontz, <br> *Appellant-Petitioner,* <br><br> v. <br><br> Erin L. (Koontz) Scott, <br> *Appellee-Respondent.* | July 27, 2016 <br><br> Court of Appeals Case No. <br> 32A04-1601-DR-40 <br><br> Appeal from the Hendricks County Circuit Court <br><br> The Honorable Daniel F. Zielinski, Judge <br><br> Trial Court Cause No. <br> 32C01-1002-DR-24 |

**Altice, Judge.**

## Case Summary

[1] Kevin R. Koontz (Father) appeals the trial court's order requiring him to pay one-third of the costs associated with his son's college expenses. Father contends that the trial court abused its discretion in determining that Brant Scott-Koontz (Son) had not repudiated his relationship with Father.

## Facts & Procedural History

[2] The facts stated in the light most favorable to the trial court's judgment follow.[1] Father's marriage to Erin L. Koontz (Mother) was dissolved on April 9, 2009. Mother had her maiden name of Scott restored to her in the order, but she continued to use the name Koontz. Mother was granted sole physical and legal custody of Son, and Father received parenting time pursuant to the Indiana Parenting Time Guidelines. Son was twelve years old at the time of the dissolution.

[3] Although Father lived in Kentucky, he initially exercised parenting time on alternating weekends. On one instance in September 2009, Mother interfered with Father's parenting time and was later found in contempt upon Father's petition. Mother was warned that any further interference would result in sanctions, and Father was provided with a make-up weekend.

[4] Thereafter, during Father's parenting time in early December 2009, Father and thirteen-year-old Son had a heated altercation during which Son alleged that Father struck him in the face. This resulted in Mother filing, on December 11, 2009, an emergency petition for modification of parenting time. She also filed a petition for change of venue from the Hancock Circuit Court. On December 16, 2009, Father filed an objection to transferring the case. At some point shortly thereafter, the trial court held an in camera interview of Son. On

---

[1] We remind Father that an appellant is required by our appellate rules to provide a fair statement of the facts presented in accordance with the standard of review appropriate to the judgment being appealed. Ind. Appellate Rule 46(A)(6). Father has not done so here, as he improperly relies on conflicting evidence in his favor.

January 26, 2010, the court entered an order, which is not contained in the record before us, and transferred the case to Hendricks County. No further action was taken by either party regarding the emergency motion, and the Hendricks Circuit Court sua sponte dismissed the matter in September 2010.

[5] Father exercised no parenting time with Son after their disagreement in early December 2009, nor did Father initiate any proceedings to enforce his right to parenting time with Son. Father did not contact Son directly or indirectly for nearly six years despite having all pertinent contact information. At some point during this time, Father moved from Kentucky to Indiana without notifying Son or Mother. Father continued to pay child support through income withholdings, but in every other way he disappeared from Son's life.

[6] Son turned eighteen in November 2014 and graduated from high school the following month. After he was accepted to Indiana University and Ball State, Mother sent a letter to Father in January or February 2015 regarding college and the sharing of upcoming expenses. She proposed a 40/40/20 split. When she did not receive a response, she looked online and discovered that Father had moved. She then sent the letter a second time at the end of March to his new address. Father received the second letter but did not respond. On May 7, 2015, Mother filed the instant petition seeking contribution from Father toward Son's college expenses.

[7] Around this same time, Father sent a Facebook friend request to Son, whom he had not contacted in over five years. Son did not respond to the request. A few

months later Father began calling Son's cell phone, but Son did not answer because he did not recognize the number. After about six weeks of calling, Father finally left a very short voicemail message near the end of September. Father's message simply stated that this is your dad and call me back if you want. Aside from several silent messages, Father left additional terse messages. Son felt uncomfortable responding to Father after all these years, so he did not.

[8] The underlying hearing was held on November 18, 2015, less than two months after Father left his first message for Son. At the time of the hearing, Son was about to turn nineteen years old. He testified to being perplexed regarding Father's long absence and indicated that he indeed wanted a relationship with Father. Son testified that he was open to talking with Father and anticipated having a relationship with him. Son, however, expressed confusion regarding how exactly to go about reestablishing a relationship after all these years.

[9] At the hearing, Son acknowledged that he used the name Brant Scott on several social media accounts, explaining that he did so because it was easier. He testified that he considered himself "a Koontz definitely" and uses his full legal last name – Scott-Koontz – in all other aspects of his life. *Transcript* at 44-45. All of his friends know him as Scott-Koontz.

[10] Much of Father's testimony was in direct conflict with Son's and Mother's. Further, while he acknowledged having no relationship with Son for almost six years, he seemed to take none of the blame for this.

[11] On December 7, 2015, the trial court issued an order wherein it found that although Father and Son clearly have a strained relationship, the evidence did not support a finding of repudiation by Son. The court found that "[f]rom December 2009 until the summer of 2015 (after Mother filed her Request for Post-Secondary Education Expenses) Father had no contact with child directly or indirectly." *Appellant's Appendix* at 18. The court also found: "Father had the means to request Court assistance to enforce parenting time. In fact, in 2009, the Hancock Circuit Court admonished Mother not to interfere with Father's parenting time and that if she did so sanctions would be ordered." *Id.* at 19. The court ordered Mother, Father, and Son to each be responsible for one-third of Son's college expenses. Father now appeals.

## Discussion & Decision

[12] A trial court's decision to grant or deny college expenses is reviewed for an abuse of discretion. *Lovold v. Ellis*, 988 N.E.2d 1144, 1149 (Ind. Ct. App. 2013). "An abuse of discretion occurs when a trial court's decision is against the logic and effect of the facts and circumstances before the court or if the court has misinterpreted the law." *Id.* at 1150. On review, we consider only the evidence and reasonable inferences favorable to the judgment. *Id.*

[13] There is no absolute legal duty on the part of parents to provide a college education for their children. *Kahn v. Baker*, 36 N.E.3d 1103, 1113 (Ind. Ct. App. 2015), *trans. denied*. In determining whether to order parents to pay sums toward their child's college education, the trial court must consider whether and

to what extent the parents, if still married, would have contributed to college expenses. *McKay v. McKay*, 644 N.E.2d 164, 166 (Ind. Ct. App. 1994), *trans. denied*. Where an adult child repudiates a parent, however, that parent must be allowed to dictate what effect the repudiation has on the parent's contribution to college expenses. *Kahn*, 36 N.E.3d at 1113. Repudiation is defined as a "complete refusal" by the adult child to participate in a relationship with the parent. *Id*. at 1112. A finding regarding repudiation is particularly fact sensitive. *Id*. at 1113.

[14] In *McKay*, this court addressed the issue of repudiation for the first time and expressly adopted the rationale of *Milne v. Milne*, 556 A.2d 854 (Pa. Super. Ct. 1989). The rationale focused on the post-majority attitudes and behavior of the child and the inequity that would result from requiring a repudiated parent to pay college expenses:

> We will not provide [a child who has repudiated his parent] with the means of inflicting yet another blow to a parent who has already suffered the deeply painful rejection of his or her child. Just as divorcing parents run the risk of alienating their children, adult children who willfully abandon a parent must be deemed to have run the risk that such a parent may not be willing to underwrite their educational pursuits. Such children, when faced with the answer 'no' to their requests, may decide to seek the funds elsewhere; some may decide that the time is ripe for reconciliation. They will not, in any event, be allowed to enlist the aid of the court in compelling that parent to support their educational efforts unless and until they demonstrate a minimum amount of respect and consideration for that parent.

*McKay*, 644 N.E.2d at 167 (quoting *Milne*, 556 A.2d at 865) (alteration in *McKay*).

The father in *McKay* exercised parenting time with his teenage son for about three years before intense acrimony resulted in father voluntarily relinquishing his parenting time in 1987. After treatment for depression, the father sought to reconcile with his son in 1991, but the son was not interested in reestablishing a relationship. When informal efforts failed, the father filed a petition to enforce parenting time. The son was ordered to participate in counseling, but even after counseling, the son refused to visit with his father.

Thereafter, when the son's college expenses increased substantially, both parents filed petitions for modification of child support/educational expenses. At the hearing, the then-twenty-year-old son testified that he had no interest in a relationship with his father and that nothing could be done to change his mind. He referred to his mother and step-father as his parents with whom he consulted with regard to his college-related decisions.

In determining that the son had repudiated the relationship with his father, this court noted that the son, as an adult, had steadfastly rejected his father's efforts to reconcile. Well before the action regarding college expenses, the father "stood with open arms to reestablish a father-son relationship", even seeking assistance from the court in furtherance of his endeavor. *Id*. at 168. The son, however, made clear that he had no interest in a relationship with his father. We observed, "All Joel wants from Father is money." *Id*. Accordingly, we

concluded that the son's repudiation of his father relieved the father of any further responsibility to contribute toward the son's college education. *Id.*

[19] Since *McKay*, we have consistently upheld trial court findings of repudiation where children, after entering adulthood, continue to actively reject a parent. *See Lovold*, 988 N.E.2d 1150-52 (despite father's willingness for years to maintain a relationship, child continued into adulthood to refuse a relationship with father); *Lechien v. Wren,* 950 N.E.2d 838 (Ind. Ct. App. 2011) (adult son's only communication with father for over a year was when he went to father's workplace to ask for money, son had not acknowledged Father's Day or father's birthday for several years, and as an adult, son petitioned to have his last name changed to his mother's maiden name); *Scales v. Scales,* 891 N.E.2d 1116, 1120 (Ind. Ct. App. 2008) (last time mother saw adult daughter was six months before the hearing in a meeting that had been confrontational and intimidating to mother, and in a telephone conversation a few days before the hearing, her adult son had told her, "I hate you you f[***]ing bitch. I hope you die."); *Norris v. Pethe*, 833 N.E.2d 1024, 1033 (Ind. Ct. App. 2005) (even though daughter's blatant rejection of her father[2] commenced in 2000, when she was a

---

[2] In *Norris*, the father spent more than two years attempting to improve his relationship with his daughter. He sought the trial court's assistance on more than one occasion, including obtaining court-ordered counseling. In addition to counseling sessions, he sent cards and attended school activities. Yet, the daughter made clear that she wanted nothing to do with him. She returned his cards unopened, confronted him at a school event and demanded that he leave, was hurtful and cold at counseling sessions, and threw away flowers and cards sent by father. She informed her father: "You're wasting your time and money. The flowers are in a trash can at school, just like our relationship…. No matter what the judge orders, he can't order my heart." *Id.*

minor, "it continued uninterrupted after she reached majority in August of 2002").

[20] In this case, by contrast, the trial court determined that Son had not repudiated his relationship with Father. The evidence favorable to the judgment reveals that Father had no contact with Son from December 2009 until the summer of 2015. After Son turned thirteen years old, Father abandoned him for nearly six years, essentially dropping off the face of the earth. Son did not understand why Father did this. Yet, Son testified at the hearing, then almost nineteen years old, that he was open to talking with Father and anticipated having a relationship with him. Son, understandably, was confused regarding how to go about reestablishing a relationship after all these years, but he expressly indicated that was his desire.

[21] We observe that Father's meager attempts to reach out to his son occurred only after Mother filed her petition for contribution towards Son's college expenses. Beginning in late-September 2015, less than two months before the hearing, Father left a few very short voicemail messages for Son that went unreturned. These calls, made in the eleventh hour, appear chiefly motived by the request for college expenses, not by a true desire to restore a relationship with Son, and Father's claims of rejection ring hollow.

[22] Much of Father's argument on appeal amounts to a request to reweigh the evidence and judge the credibility of witnesses, which we cannot do. *See Lovold*, 988 N.E.2d at 1151. This is not a case of a father standing with open arms and

suffering "the deeply painful rejection" of his child. *McKay*, 644 N.E.2d at 167 (quoting *Milne*, 556 A.2d at 865). Based on our review of the evidence and testimony most favorable to the judgment, we cannot say that we are left with a firm conviction that a mistake has been made or that the evidence does not support the trial court's determination that Son has not repudiated his relationship with Father. *Lechien*, 950 N.E.2d at 844.

[23] Judgment affirmed.

[24] Bailey, J. and Bradford, J., concur.