## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 09 2017, 9:41 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Thomas M. Barr
Thomas M. Barr & Associates
Nashville, Indiana

ATTORNEY FOR APPELLEE

Christopher T. Smith
Smith Davis LLC
Greenfield, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kurt R. Duncan,<br>*Appellant-Respondent,*<br><br>v.<br><br>Betsy J. Duncan,<br>*Appellee-Petitioner.* | June 9, 2017<br><br>Court of Appeals Case No.<br>30A01-1611-DR-2608<br><br>Appeal from the Hancock Circuit Court<br><br>The Honorable Charles D. O'Connor, Special Judge<br><br>Trial Court Cause No.<br>30C01-0709-DR-829 |

**Bradford, Judge.**

# Case Summary

The marriage of Appellant-Respondent Kurt Duncan ("Father") and Appellee-Petitioner Betsy Duncan ("Mother") was dissolved in 2009, having produced two children, Brittany and Nattalee, born in 1993 and 1995, respectively (collectively, "the Children"). In October of 2012, the trial court ordered Father to pay a portion of Brittany's college expenses, as she was a full-time student at the time. The October of 2012 order made Father's obligation contingent on Brittany maintaining a certain grade point average ("GPA").

In 2014, Mother petitioned the trial court for a contribution from Father toward college expenses for Nattalee, who had begun college in 2013. As with Brittany, Father's obligation for college expenses for Nattalee was made contingent on her maintaining a certain GPA. After a hearing, the trial court issued an order grating Mother's petition ("the Order"), in which it ordered Father to pay a portion of the Children's college expenses dating back to 2013, found Father in indirect contempt of court for failing to timely pay Brittany's college expenses, and ordered him to pay a portion of Mother's attorney's fees. Father contends that the trial court erroneously concluded that (1) the Children had not repudiated him, (2) he has any obligation to contribute to the Children's college expenses, (4) he was in contempt of court, and (4) he was obligated to pay a portion of Mother's attorney's fees. We conclude that the trial court did not err in concluding that the Children had not repudiated Father. The trial court, however, erred in concluding that Father has any current obligation for the Children's college expenses, because neither has

established that she has maintained the requisite GPA. Consequently, we also reverse the trial court's determination that Father is in contempt of court and that he is currently obligated to pay a portion of Mother's attorney's fees. We affirm in part, reverse in part, and remand for further proceedings.

# Facts and Procedural History

[3] Father and Mother's marriage was dissolved on April 28, 2009, and two children were born of the marriage: Brittany, born June 3, 1993, and Nattalee, Born March 30, 1995. On June 29, 2012, Mother petitioned for payment of educational expenses. On October 24, 2012, the trial court found that Father had a child support arrearage of $10,878.09 and ordered Father to pay 71% of Brittany's post-secondary educational expenses. The trial court also made the following findings regarding Brittany's college expenses:

> The parties' oldest child Brittany is a full-time college student. Mother seeks an order on how college expenses are to be paid. Brittany lives at home and commutes to Indiana University-Purdue University in Indianapolis. Brittany spends some overnights with her boyfriend. Brittany works approximately thirty hours per week and earns $8.67 per hour. She uses her earnings for her living expenses.
>
> Based on the evidence, the Court orders that Brittany's college expenses to be paid 29% by the Mother and 71% by the Father after Brittany has contributed $2,000 per year toward her costs. Brittany's contribution may come from grants, loans or her wages. The Court notes Brittany received a Pell Grant her first year of college in the amount of $9,662.00[] that satisfies her obligation for the current school year. The Court defines Brittany's college expenses to be tuition, books, required fees,

and on campus room and board. If Brittany elects to live off campus, college expenses include $100 per week for transportation and food expense for each week that Brittany attends classes for a semester in which she is enrolled in at least nine hours of credit. The parents' financial obligation for Brittany's college expenses is limited to four years and Brittany maintaining a cumulative [GPA] of 2.5. Brittany is directed to insure that each parent has access to her grades and that she applies for all available grants and financial aid.

Appellant's App. Vol. II pp. 31-32.

[4] On March 10, 2014, Mother moved for a rule to show cause and petitioned for a college expense contribution for Nattalee. On April 29, 2014, the trial court issued the Order:

ENTRY ON PENDING MOTIONS

Hearing was held on April 25, 2014 on the Petitioner's Verified Motion For Rule To Show Cause And Petition For College Expense Contribution and Respondent's Request To Find Daughter Emancipated. The Petitioner [Mother] appeared in person and by counsel Christopher Smith. The Respondent [Father] appeared in person. The Court, having taken the issues under advisement, now makes the following Order.

1) The parties are the parents of Brittany Duncan, born June 3, 1993 and Nattalee Duncan, born March 30, 1995.

2) Brittany was previously found to be emancipated and the parties agree that Nattalee became emancipated on her nineteenth birthday on March 30, 2014. The Court vacates Father's child support for Nattalee effective March 30, 2014.

3) Father had a child support obligation for Nattalee of $143 per week. His child support arrearage was found to be $10,878.08 as of October 19, 2012. From October 20, 2012 through March 30, 2014, Father should have paid current child

support in the sum of $10,725.  Since October 19, 2012, Father has paid a total of $12,240 thereby reducing his arrearage by $1,515 to $9,363.08.  The Court orders Father to pay the arrearage at the rate of $100 Per week.  The Court instructs Mother's attorney to prepare an Amended Income Withholding Order to Father's employer.

4)      The Court also ordered the parents to assist Brittany with her college expenses.  The evidence was that Father has not paid any sums toward Brittany's college expenses.  The Court finds Father owes Brittany the sum of $6,209.76 for his share of her college expenses for the 2012-2013 school year and the 2013-2014 school year.  The Court orders Father to pay Brittany $6,209.76 within sixty days and to timely pay Brittany's college expenses as they come due.

5)      Mother seeks a college-expense order for Nattalee as she is completing her first year of college.  Nattalee lives with Mother and commutes to IUPUI.  The evidence presented indicated the parties' gross weekly income figures are $1,517 for Father and $463 for Mother, or an income division of 77% for Father and 23% for Mother.  The Court finds the parents should contribute to Nattalee's educational costs in much the same way as they have contributed for Brittany's post-secondary educational costs. Nattalee will be required to contribute up to $2000 per year toward her educational costs through grants, loans and wages. The parents are ordered to contribute 23% from Mother and 77% from Father for any educational costs after Nattalee's contribution.  Since Nattalee is living with Mother, the Court finds that an appropriate room and board cost to be imputed is $140 per week for each week Nattalee is enrolled in and attending school.  This will most likely be thirty-six weeks per year.  The Court orders Father to pay to Mother $108 per week for each week that Natallee [sic] is attending school and living with Mother.

6)      The Court finds that Nattalee's school expenses for the current year that the parents are responsible for is the sum of

$1,414.51.  Father's share is $1,089.17.  The Court orders Father to pay this amount to Mother within sixty days.

7)      The Court finds it appropriate to modify the college expense order for Brittany given the new circumstances of a second child in college, and the evidence that Brittany lives predominately with her boyfriend.  The Court continues to order the parents to contribute to Brittany's post-secondary college expenses under the new 77/23 division after Brittany has contributed $2000 per year toward her expenses.  The Court reduces the parents' obligation for Brittany's transportation and food expense to the sum of $50 per week.

8)      The Court continues the previous limitations on the parent's [sic] responsibility for Brittany as expressed in the October 2012 Order and makes those limitations apply to Nattalee as well.

9)      The Father expressed a repudiation argument, that because his daughters have rejected any type of relationship with him, he should not be required to contribute to their college expenses.  The Court rejects Father's repudiation argument because the Court finds that Father has not made a reasonable effort to have a positive relationship with his children after he and Mother divorced.  Father testified he had attempted to call the girls a few times without success.  Father admitted he did not attempt to talk to Brittany at Nattalee's graduation and did not visit the girls at Christmas when they were at Father's relatives.

10)      The Court finds the Father in indirect contempt of Court for his failure to honor the Court order with respect to payment of his portion of Brittany's college expenses.  The Court sentences Father to sixty days in jail and suspends it on the condition he timely meets his financial obligations to Mother and his children.  The Court orders Father to pay partial attorney fees to Mother's counsel Christopher Smith in the amount of $1,000 in monthly installments of $200 beginning May 15, 2014.

Appellant's App. Vol. II pp. 23-26.  On May 29, 2014, Father filed a motion to correct error.  On October 18, 2016, following a hearing, the trial court denied Father's motion to correct error.

# Discussion and Decision

[5] Father appeals from the denial of his motion to correct error.  "A trial court has discretion to grant or deny a motion to correct error, and we reverse its decision only for an abuse of that discretion.  An abuse of discretion has occurred if the trial court's decision is against the logic and effect of the facts and circumstances before the court or if the court has misinterpreted the law."  *Bales v. Bales*, 801 N.E.2d 196, 198 (Ind. Ct. App. 2004) (citations omitted).  In issuing the Order, the trial court entered findings of fact and conclusions thereon *sua sponte*.  *Sua sponte* findings only control issues that they cover, while a general judgment standard applies to issues upon which there are no findings.  *Eisenhut v. Eisenhut*, 994 N.E.2d 274, 276 (Ind. Ct. App. 2013) (citations omitted).

> We may affirm a general judgment with findings on any legal theory supported by the evidence.  As for any findings that have been made, they will be set aside only if they are clearly erroneous.  A finding is clearly erroneous if there are no facts in the record to support it, either directly or by inference.

*Id*.

# I. Repudiation

Father first claims that the trial court abused its discretion in declining to eliminate his post-secondary obligations entirely on the basis that the Children had repudiated him.

> Repudiation is defined as a complete refusal to participate in a relationship with the parent. [*Lovold v. Ellis*, 988 N.E.2d 1144, 1150 (Ind. Ct. App. 2013)] (citing *Norris v. Pethe*, 833 N.E.2d 1024, 1033 (Ind. Ct. App. 2005)). Indiana law provides that a court may enter an educational support order for a child's education at a post-secondary educational institute, but repudiation of a parent by a child is recognized as a complete defense to such an order. *See* Ind. Code § 31-16-6-2(a)(1); *McKay v. McKay*, 644 N.E.2d 164, 166 (Ind. Ct. App. 1994). In *McKay*, the Court noted that there is no absolute legal duty on parents to provide a college education for their children, and adopted what was Pennsylvania's approach at that time, stating "where a child, as an adult over eighteen years of age, repudiates a parent, that parent must be allowed to dictate what effect this will have on his or her contribution to college expenses for that child." 644 N.E.2d at 166 (quoting *Milne v. Milne*, 383 Pa. Super. 177, 556 A.2d 854, 856 (1989)). A child's repudiation of a parent—that is a compete refusal to participate in a relationship with a parent— may obviate a parent's obligation to pay certain expenses, including college expenses. *See Bales v. Bales*, 801 N.E.2d 196, 199 (Ind. Ct. App. 2004), *reh'g denied, trans. denied.* It is well established that on appeal, we do not reweigh the evidence; instead, we consider first whether the evidence supports the findings and then whether the findings support the judgment. *See Lovold,* 988 N.E.2d at 1150. The appellant, for his part, must establish that the trial court's findings are clearly erroneous; findings are clearly erroneous when a review of the record leaves us firmly convinced that a mistake has been made. *See id.*

*Kahn v. Baker*, 36 N.E.3d 1103, 1112-13 (Ind. Ct. App. 2015), *trans. denied*.

[7] We conclude that the record contains sufficient evidence to support the trial court's finding that the Children did not repudiate Father. In response to questions by Father regarding the Children's relationship with him, Mother responded, "[m]y daughter had a … graduation party … that you chose not to come to." Tr. p. 26. Mother further testified that the Children have tried to have a relationship with Father. Mother testified that the Children had attended Father's grandmother's funeral and that Brittany had unsuccessfully attempted to visit him at his home in Brown County. According to Father's testimony, he spoke to his mother about spending at least one Christmas at her house with the Children but, in the end, did not go because he was working. We conclude that this evidence is sufficient to support the trial court's determination that a repudiation did not occur based on attempts by the Children to maintain a relationship with Father. While Father does point to evidence that would tend to support a finding of repudiation, this is merely an invitation to reweigh the evidence, which we will not do. *See In re Paternity of Pickett*, 44 N.E.3d 756, 763 (Ind. Ct. App. 2015) ("Although the record contains evidence that could have supported a finding that Child repudiated Father, there is also evidence that would support a determination that Child did not repudiate Father. And under our standard of review, we may consider only the evidence favorable to the trial court's judgment.").

### *Standard of Review for Issues II, III, and IV*

[8] Father also challenges the specific provisions of the Order relating to the amount of post-secondary educational expenses he has been ordered to pay.

We review the trial court's apportionment of college expenses under a clearly erroneous standard. *Carr v. Carr*, 600 N.E.2d 943, 945 (Ind. 1992); *Winslow v. Fifer*, 969 N.E.2d 1087, 1092 (Ind. Ct. App. 2012), *trans. denied* (2013). Therefore, we will affirm the trial court unless its order "'is clearly against the logic and effect of the facts and circumstances which were before' the court." *Marriage of Hensley v. Hensley*, 868 N.E.2d 910, 913 (Ind. Ct. App. 2007) (quoting *Carr*, 600 N.E.2d at 945). In determining whether the trial court's decision is clearly erroneous, we consider only the evidence and reasonable inferences favorable to the judgment without reweighing evidence or judging witness credibility. *Winslow*, 969 N.E.2d at 1092.

*In re Paternity of Pickett*, 44 N.E.3d at 764.

## II. The Amount of Brittany's College Expenses

[9] As mentioned, the trial court's order issued in October of 2012 provides that "[t]he parents' financial obligation for Brittany's college expenses is limited to four years and Brittany maintaining a cumulative [GPA] of 2.5." Appellant's App. Vol. II p. 32.[1] Moreover, the Order specifically "continues the previous limitations on the parent's [sic] responsibility for Brittany as expressed in the October 2012 Order and makes those limitations apply to Nattalee as well." Appellant's App. Vol. II p. 25. Father correctly contends that the record contains no evidence that Brittany ever maintained the required cumulative GPA of 2.5. Consequently, Father is also correct that the record does not

---

[1] Although the Children were also directed to ensure that both parents had access to their grades and apply for all available grants and financial aid, the parents' financial obligations to the Children were not specifically tied to these directions.

support the trial court's order that he pay any of Brittany's post-secondary educational expenses. We vacate those portions of the Order requiring Father to pay Brittany's post-secondary education expenses, whether current or accrued, and remand for an evidentiary hearing on whether she has satisfied the GPA requirements. If the trial court determines that Father's obligation has been triggered, then an amount can be determined.

## III. The Amount of Nattalee's College Expenses

[10] Father contends that the same dearth of evidence that exists regarding Brittany's GPA also exists in Nattalee's case. As with Brittany, we vacate those portions of the Order requiring Father to pay Nattalee's post-secondary education expenses, whether current or accrued, and remand for an evidentiary hearing on whether she has satisfied the GPA requirements. If so, the scale of the obligation can then be determined.

[11] Father makes another claim that we choose to address, as it is likely to arise on remand, which is that the trial court erroneously ordered him to pay for Nattalee's college expenses during a period when he was already paying child support. Indiana Code subsection 31-16-6-2(b) provides that "[i]f the court orders support for a child's educational expenses at a postsecondary educational institution under subsection (a), the court shall reduce other child support for that child that … is duplicated by the educational support order [and] would otherwise be paid to the custodial parent." We have also noted that "[d]uplicative support and college expense orders should be avoided." *Stover v.*

*Stover*, 645 N.E.2d 1109, 1110 (Ind. Ct. App. 1995) (citing *Carr v. Carr*, 600 N.E.2d 943, 946 (Ind. 1992)).

[12]     The trial court issued the Order on April 29, 2014, and, *inter alia*, determined that Nattalee was emancipated as of March 30, 2014, and terminated Father's child support obligation of $143.00 per week as of that date. The trial court also found that Nattalee had incurred $1414.51 in school expenses for the 2013-14 school year and that Father was responsible for $1089.17 of that total, or 77%. Finally, the trial court ordered that Father would pay $108.00 per week, or 77% of Nattalee's room, board, and transportation costs of $140.00 per week while living with Mother but, significantly, did not order Father to pay these expenses retroactively.

[13]     Father's argument is based on his contention that the trial court ordered him to pay educational expenses that were duplicative of his child support payments. The record does not support this contention. First, the $1089.17 that Father was ordered to pay (for his share of expenses for books, fees, and an iPad) was strictly for college-related purposes and not duplicative of his child support obligations in any way. Moreover, the $108.00 weekly payment for expenses incurred while Nattalee lives with Mother never overlapped with Father's child support payments, as the Order simultaneously established the former—without making it retroactive—while eliminating the latter. The trial court did not err in ordering post-secondary educational payments that were duplicative of Father's child support payments.

# IV. Father's Ability to Pay

In another issue likely to arise on remand, Father contends that the trial court erroneously failed to consider his ability to pay a portion of Brittany's and Nattalee's college expenses. Indiana Code subsection 31-16-6-2(a) provides, in part, as follows:

> (a) The child support order or an educational support order may also include, where appropriate:
> > (1) amounts for the child's education in elementary and secondary schools and at postsecondary educational institutions, taking into account:
> > > (A) the child's aptitude and ability;
> > > (B) the child's reasonable ability to contribute to educational expenses through:
> > > > (i) work;
> > > > (ii) obtaining loans; and
> > > > (iii) obtaining other sources of financial aid reasonably available to the child and each parent; and
> > > (C) the ability of each parent to meet these expenses[.]

Father essentially argues that the trial court abused its discretion in apportioning college expenses based on the incomes of the parties, which it found to be $1517.00 per week for Father and $463.00 per week for Mother, or approximately $79,000.00 and $24,000.00 per year, respectively. While it is true that the record contains no direct evidence that Father was able to pay a proportionate share of the Children's college expenses, we cannot say that the trial court abused its discretion in drawing the inference that he could. Quite simply, Father is making approximately $79,000.00 per year and presented no evidence of extraordinary expenses, such as unexpected medical bills, that

would hinder his ability to pay his fair share of the Children's college expenses. To the extent that Father points to evidence in the record of circumstances that he argues hinder his ability to pay, the trial court was under no obligation to credit it, and apparently did not. Father has failed to establish error in this regard.

# V. Contempt

[16] Father also challenges that portion of the Order finding him in indirect contempt of court for failing to pay Brittany's college expenses. We have already concluded, however, that the trial court erred in concluding that Father has a current obligation to pay any of Brittany's or Nattalee's college expenses. Consequently, Father cannot be held in contempt for failure to pay them. We therefore also vacate the provisions of the Order declaring Father to currently be in contempt of court and ordering him to pay a portion of Mother's attorney's fees.

# Conclusion

[17] We conclude that Father failed to establish that the trial court erred in finding that the Children have not repudiated Father. Father has established, however, that the trial court erred in concluding that he had any current obligation to pay the Children's post-secondary educational expenses. Consequently, we also vacate the trial court's finding that Father is currently in indirect contempt of court for failing to pay college expenses and a portion of Mother's attorney's fees.

The judgment of the trial court is affirmed in part and reversed in part, and we remand for further proceedings consistent with this memorandum decision.

Najam, J., and Riley, J., concur.