## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 17 2018, 8:06 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Angela B. Swenson
Swenson & Associates PC
Carmel, Indiana

ATTORNEY FOR APPELLEE

Zachariah M. Phillips
The Law Office of
Melissa Winkler-York
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Charles W. Wallen, <br> *Appellant-Petitioner,* <br><br> v. <br><br> Jeanne L. Wallen, <br> *Appellee-Respondent* | October 17, 2018 <br><br> Court of Appeals Case No. 18A-DR-807 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable John M.T. Chavis, II, Judge <br><br> Trial Court Cause No. 49D05-9704-DR-473 |

**Baker, Judge.**

Charles Wallen appeals the trial court's decision ordering him to pay post-secondary educational support for his daughter, Sarah Wallen, arguing that the trial court erred in concluding that Sarah did not repudiate her relationship with Charles. Finding no error, we affirm.

# Facts

Charles and Jeanne Wallen divorced in 1997. They have one daughter, Sarah, who is currently twenty years old and attending Franklin College. Though Charles has not maintained a relationship with Sarah since her birth, he is current on all court-ordered child support. The current child support order does not address the parties' respective obligations regarding post-secondary educational support.

Charles and Sarah have rarely met and have sparsely communicated over the past twenty years. When Sarah was young, she and Charles agreed to maintain better communication through calls and visits. Then, in the summer of 2016, Charles and Sarah met at Jeanne's home, where Charles asked Sarah about potential college options. No further communication came from either incident.

Charles rarely called Sarah, and Sarah rarely called Charles. Throughout Sarah's entire childhood, Charles exercised his right to have Sarah spend the night at his house only once. Charles had sent birthday cards to Sarah until she was eighteen, but Sarah never responded to those birthday cards. Additionally, Charles requested Sarah as a friend on Facebook, but she blocked his request.

[5] In the fall of 2015, Sarah enrolled in Franklin College. To pay for her education, Sarah has applied for and received multiple loans. Additionally, on multiple occasions, Sarah requested and was denied grants to further offset her debt. Currently, only Jeanne is helping Sarah pay for her education.

[6] On February 20, 2018, while Sarah was in her third year at Franklin College, Jeanne filed a petition for post-secondary education support. Jeanne requested that Charles pay one-third of Sarah's tuition for her final year of school. Charles objected, arguing that he had no financial obligation because Sarah had repudiated their relationship.

[7] On March 5, 2018, the trial court held an evidentiary hearing on Jeanne's petition. Ultimately, the trial court found that Sarah had not repudiated her relationship with Charles and that Charles was legally obligated to help pay for Sarah's post-secondary education. The court ordered that $8,320—or roughly $4,116 per semester—would be the amount of Charles's obligation. Charles now appeals.

# Discussion and Decision

[8] On appeal, Charles argues that the trial court erred when it concluded that Sarah had not repudiated her relationship with him. Because of the alleged repudiation, he argues that he should not have to help pay for Sarah's tuition. Charles also points out that he has never missed a child support payment and that Sarah is now legally emancipated by virtue of her adult age.

[9]     In reviewing a trial court's order apportioning college expenses between parents, we will not overturn the order unless it is clearly against the logic and effect of the facts and circumstances before the trial court. *Warner v. Warner*, 725 N.E.2d 975, 978 (Ind. Ct. App. 2000). We will not reweigh the evidence or assess witness credibility, and we will only consider the evidence and reasonable inferences favorable to the judgment. *Id*.

[10]    Parents do not have an absolute legal duty to provide a college education for their children. *Neudecker v. Neudecker*, 577 N.E.2d 960, 962 (Ind. 1991). Nevertheless, a significant number of parents choose to support their children financially as they pursue a higher education. For divorced parents, Indiana Code section 31-16-6-6(c) says, in pertinent part, that "[i]f a court has established a duty to support a child in a court order issued before July 1, 2012, the parent or guardian of the child . . . may file a petition for educational needs until the child becomes twenty-one (21) years of age."

[11]    A divorced parent will not be required to contribute to his child's education if the adult child has repudiated his or her relationship with the parent. *McKay v. McKay*, 644 N.E.2d 164, 168 (Ind. Ct. App. 1994). We have explained the public policy behind this rule as follows:

> [A]dult children who willfully abandon a parent must be deemed to have run the risk that such a parent may not be willing to underwrite their educational pursuit . . . . They will not, in any event, be allowed to enlist the aid of the court in compelling that parent to support their education efforts unless and until they demonstrate a minimum amount of respect and consideration for that parent.

*Id.* at 167. A child repudiates the relationship with her parent by completely refusing to participate in a relationship with the parent. *Bales v. Bales*, 801 N.E.2d 196, 199 (Ind. Ct. App. 2004). To find repudiation, the child must have made affirmative actions after reaching the age of eighteen. *Scales v. Scales*, 891 N.E.2d 1116, 1119 (Ind. Ct. App. 2008). We are more apt to forgive the words and actions of minor children towards their divorced parents, given their immaturity. *Id.*

[12] Charles claims that Sarah repudiated her relationship with him. He argues primarily that Sarah has yet to return any phone calls, send him thank-you cards for birthday and Christmas gifts, or maintain any constant communication. Charles maintains that Sarah has shut the door on any chance at a relationship and that this accumulation of incidents amounts to a repudiation.

[13] Yet, as we have stated, there must be an affirmative action by the child after reaching the age of majority for there to be a true repudiation. Charles would have us evaluate these instances in a composite to form what he considers to be an outright repudiation of their relationship. In looking at the record, however, there was no "one moment" where Sarah severed the possibility of a relationship with Charles. While there might have been hurt feelings or animosity lurking beneath the surface, at no point did Sarah make affirmative actions that decisively rejected and repudiated Charles. Additionally, all of the times Sarah did not return Charles's phone calls or failed to respond to his gifts

and requests occurred before Sarah turned eighteen, and trial courts only consider evidence of repudiation once the child reaches the age of majority.

[14] In fact, the only post-age-of-majority encounter Charles points us to as evidence of repudiation was the meeting in 2016 when Charles asked Sarah about her college plans. But nothing in the record indicates that Sarah repudiated Charles even then. Charles inquired about Sarah's collegiate plans, and Sarah avoided answering or asking questions. When Charles left, he asked if Sarah would contact him later with finite details; she never called. We cannot conclude that failing to make a phone call amounts to a definitive repudiation of a relationship with a parent. If it did, many parent-child relationships would indeed be in danger of ceasing to exist.

[15] Charles's second argument is that Sarah's act of blocking his friend request on Facebook amounted to a complete repudiation. Charles's argument here is unavailing. An adult child's act of rejecting her parent's friend request on Facebook can hardly be seen as an outright repudiation for several reasons. For one, the trial court reasonably pointed out that "some children who have good relationships with their parents would not allow their parents to be their friends on Facebook just because . . . children like to have their own private lives." Post-Secondary Hearing Tr. p 24-25. Furthermore, there must be more concrete evidence to conclude that a repudiation actually took place. *See, e.g., Norris v. Pethe*, 833 N.E.2d 1024, 1033-35 (Ind. Ct. App. 2005) (holding that child repudiated father by rejecting all gifts, screaming and cursing at father, and telling him repeatedly to never speak to her again). At most, Sarah kept herself

at arms-length from a father she barely knew. The trial court did not err by rejecting Charles's claim that the rejected friend request amounted to repudiation.

[16] We find *Duncan v. Duncan*, 81 N.E.3d 219 (Ind. Ct. App. 2017), instructive. In that case, the father and the children—much like Charles and Sarah—maintained only the semblance of a parent-child relationship. The father visited the children occasionally, sent gifts, and contacted the mother about spending more time with the children to no avail. Likewise, the children sometimes called the father, attempted to visit him, and provided infrequent life updates. Nevertheless, despite this frayed relationship, we held that there was no evidence that the children repudiated their father. *Id.* at 227. *Duncan* bears a striking resemblance to the case before us. Charles and Sarah rarely communicated, and even when they met to discuss future meetings, neither followed through on their promises. Gifts were exchanged, and words were spoken, but the two simply existed in separate spheres. As in *Duncan*, while Charles and Sarah's relationship is by no means amicable, there is no outright repudiation in the record that would lead us to classify the relationship as severed.

[17] Finally, regarding Charles's argument that he is under no legal obligation to pay post-secondary expenses for Sarah because she is legally emancipated, our General Assembly has already spoken to this matter. Indiana Code section 31-16-6-6(c) states that "[i]f a court has established a duty to support a child in a court order issued before July 1, 2012, the parent . . . may file a petition for

educational needs *until the child becomes twenty-one (21) years of age*." (Emphasis added). Even though Sarah is legally emancipated by virtue of her age, the statute allows for a parent to petition for post-secondary education expenses from another parent until the child turns twenty-one. Thus, since Sarah was not yet twenty-one at the time Jeanne filed the petition, Charles can still be ordered to pay for some of Sarah's college expenses. *See Littke v. Littke*, 992 N.E.2d 894, 898 (Ind. Ct. App. 2013). Therefore, Charles cannot use emancipation as a defense when ordered to pay for Sarah's tuition.

[18] In reviewing the evidence most favorable to the judgment, we hold that the trial court did not err in concluding that Sarah did not repudiate her relationship with Charles. Therefore, the trial court properly ordered Charles to pay a portion of Sarah's post-secondary expenses.

[19] The judgment of the trial court is affirmed.

May, J., concurs.
Robb, J., dissents with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Charles W. Wallen, | Court of Appeals Case No. |
| *Appellant-Petitioner,* | 18A-DR-807 |
| v. | |
| Jeanne L. Wallen, | |
| *Appellee-Respondent* | |

**Robb, Judge, dissenting.**

[20] The majority concludes there was no error in the trial court's finding that Sarah has not repudiated her relationship with Charles. I respectfully disagree.

[21] I acknowledge the standard of review in this situation is abuse of discretion, and we are not to reweigh the evidence. An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before it *or if the trial court has misinterpreted the law. Hays v. Hockett*, 94 N.E.3d 300, 304 (Ind. Ct. App. 2018), *trans. denied*. Here, I believe the trial court has misinterpreted the law by looking for one significant

relationship-altering event between Charles and Sarah that acted as a repudiation after Sarah reached the age of majority. The only particular finding the trial court made regarding repudiation was with respect to Sarah declining Charles' Facebook friend request:

> the Court finds some children who have good relationships with their parents would not allow their parents to be their friends on Facebook . . . . So the fact that the child denied subsequent requests from a parent I don't think is indicative of repudiation.

Transcript, Volume 2 at 24-25. The majority also concludes "there was no 'one moment' where Sarah severed the possibility of a relationship with Charles[,]" and states "trial courts only consider evidence of repudiation once the child reaches the age of majority." Slip op. ¶ 13. I do not believe this is the standard our law imposes for determining repudiation.

[22] In *McKay v. McKay,* 644 N.E.2d 164, 168 (Ind. Ct. App. 1994) (citing *Milne v. Milne,* 556 A.2d 854 (1989)), this court adopted what was Pennsylvania's approach at that time, holding that where a child, as an adult over eighteen years of age, repudiates a parent, that parent must be allowed to dictate what effect this will have on his or her contribution to college expenses for that child. In doing so, we quote at length from *Milne*, including the following passage:

> [W]e certainly will not consider pre-majority attitudes and behavior, as we all recognize that the maturity and restraint which can be expected of adults is not appropriately applied to evaluate children. . . .

By college age, children of divorced parents must be expected to begin to come to terms with the reality of their family's situation. They must begin to realize that their attitudes and actions are their individual responsibilities. Whatever their biases and resentments, while one can understand how they got that way, when they become adults it is no longer appropriate to allow them to stay that way without consequence.

644 N.E.2d at 167 (quoting *Milne*, 556 A.2d at 861).

[23] Since *McKay*, we have consistently upheld trial court findings of repudiation where children, after entering adulthood, *continue* to actively reject a parent. *See Lovold v. Ellis*, 988 N.E.2d 1144, 1150-52 (Ind. Ct. App. 2013) (despite father's willingness for years to maintain a relationship, child continued into adulthood to refuse a relationship with father); *Norris v. Pethe*, 833 N.E.2d 1024, 1033 (Ind. Ct. App. 2005) (even though daughter's blatant rejection of her father commenced in 2000, when she was a minor, "it continued uninterrupted after she reached majority in August of 2002").

[24] Like *Lovold* and *Norris*, the record here clearly shows that even though Sarah's repudiation of her relationship with Charles commenced when she was a minor, it has continued uninterrupted after she reached the age of majority. In such circumstances, one would not expect "one moment" to occur when Sarah specifically and wholly repudiates Charles. Rather, her actions and inactions after she reached the age of majority—failing to invite her father to her high school graduation, avoiding his direct questions about college, refusing to reciprocate when he has reached out, failing to reach out on her own—

collectively act as a repudiation. Could Charles have done more? Certainly. But Sarah has done *nothing* to foster a relationship, and I believe her active disinterest over the course of many years, including in the two years since she reached the age of majority, is a repudiation that should relieve Charles of the obligation to contribute to her college expenses. To find otherwise allows the very situation the *Milne* court warned of: failing to teach a child that she must take responsibility for her actions by allowing her as an adult to enlist the aid of a court to force a parent whom she has rejected to contribute to her college education without requiring her to show a minimum amount of respect and consideration for that parent. *See* 556 A.2d at 865.

[25] I would reverse the trial court's order.