## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 23 2020, 10:01 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| Kristina L. Lynn | Jay T. Hirschauer |
| Lynn Law Office, P.C. | Hirschauer & Hirschauer |
| Wabash, Indiana | Logansport, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

Tracy Haney Mills,

*Appellant-Respondent,*

v.

Scott Haney,

*Appellee-Petitioner*

December 23, 2020

Court of Appeals Case No. 20A-DR-1340

Appeal from the Wabash Superior Court

The Honorable William C. Menges, Jr., Special Judge

Trial Court Cause No. 85D01-0001-DR-3

**Crone, Judge.**

# Case Summary

Tracy Haney Mills (Mother) filed a motion for an order requiring her ex-husband Scott Haney (Father) to contribute to the college expenses of their daughter (Daughter). After several hearings, the trial court denied the motion, finding that Daughter had repudiated her relationship with Father. Mother now appeals, claiming that the trial court's finding is erroneous. We affirm.

# Facts and Procedural History

The relevant facts most favorable to the trial court's ruling are as follows. Mother and Father had two children, including Daughter, who was born in April 1997. Mother and Father's marriage ended acrimoniously in August 2001, and Mother had custody of the children. Father paid child support, but Mother repeatedly frustrated his visitation efforts, even after being found in contempt in January 2006, and he ultimately stopped visiting the children in 2007 or 2008.[1] Father has not spoken to Mother since 2001, and he has not had a conversation with Daughter since approximately 2013.

---

[1] At the July 2017 hearing, Father testified,

> It was every time I came to Indiana [from Pennsylvania] to pick up my child or my children, I had to go and call [Father's attorney] on a Friday afternoon. I had to be here on Thursday to try to do it, and then I would have to get an emergency petition from the court and have a Sheriff come out to their house and pick up the children or, or escort them to me. That's why it got to be every single time, and, and that is why it ended up not being me coming to see my kids. It wasn't because I didn't love them. My God! It was every single time I came over here it was constantly, constantly, it was costing me $600.00 to drive over here and back and another $500.00 or so to pay [the attorney] to, to go, to get an emergency petition, and that is why. I just said I can't keep doing this.

Tr. Vol. 2 at 53.

[3] In 2016, Mother filed a motion for an order requiring Father to assist Daughter with her college expenses. The trial court held hearings in July 2017, July 2018, and June 2020. In July 2017, Daughter was attending college and living with Mother but was considered emancipated for child support purposes. Both Father and Daughter stated that they had no relationship. Daughter testified that Father had not called or written her in the last five years and that she had called him, but "he doesn't answer. It's my stepmom who answers." Tr. Vol. 2 at 45. Father testified that no one contacted him before Daughter started college and that he had received no information regarding where she was going to school, her grades, or financial aid. He stated that he wanted to "re-establish a relationship" with Daughter, but that he did "not want to pay for the college right at this time." *Id*. at 49, 50.

[4] At the July 2018 hearing, Father testified that Daughter had not talked to him since the last hearing. He stated that just before the current hearing began, he walked by Mother, Daughter, and her stepfather, and Daughter "didn't say a word to" him. *Id*. at 80. When asked if he said anything to her, Father replied that he did not but observed, "She is now twenty-one. She could have walked over and said hi to me too." *Id*. at 83. He stated that he did not think that it was "appropriate" for him to pay for Daughter's college expenses. *Id*. at 79.

[5] At the June 2020 hearing, Daughter did not appear. Mother testified that Daughter had not had any contact with Father since the last hearing. Father testified that he briefly saw Daughter in court while waiting for a hearing that

was ultimately cancelled[2] but had not had any communication with her since.

At the conclusion of the hearing, the trial court ruled from the bench as follows:

> I think in this particular case what is the final deciding factor, is that [Daughter] and [Mother] have known for two and a half to three years, maybe longer, that [Father's] defense to their request to college expenses was the law as established in the McKay case [*McKay v. McKay*, 644 N.E.2d 164 (Ind. Ct. App. 1994)] about the repudiation of the parent-child relationship. Early on, we can get into all kind of interesting arguments as to who started this, but it would have been extremely simple if she desired and had any desire for a relationship for [Daughter] to reach out, if nothing more than to send a birthday card, or a Christmas card, or her grades, or copies of her diplomas, or anything else that she was doing, but she chose not to. I think that confirms the contention, [Father's] contention from the beginning, that she has in fact repudiated the parent-child relationship between her and him. I think under the, under the McKay case, [Father] has not [sic] obligation then to provide college expenses and we will show that [Mother's] Motion for College Expenses is denied.

*Id*. at 108. Mother now appeals.

## Discussion and Decision

[6] Mother argues that the trial court erred in denying her motion for college expenses. "[I]n Indiana, 'there is no absolute legal duty on the part of parents

---

[2] Father testified that Daughter "came over to me, uh, and said, kind of laughed and went, we're not going, or we're not having a hearing today, kind of smirky and kind of laughing about it." Tr. Vol. 2 at 103-04. When questioned whether he asked Daughter "if she wanted to go get lunch or something[,]" Father replied, "I did not. I had a ten and a half, almost eleven-hour drive going back home. I had just driven in that morning and then, uh, with no court going, I had to turn around and drive all the way back." *Id*. at 105.

to provide a college education for their children.'" *Cunningham v. Barton*, 139 N.E.3d 1081, 1088 (Ind. Ct. App. 2019) (quoting *McKay*, 644 N.E.2d at 166). "Indiana law provides that a court may enter an educational support order for a child's education at a post-secondary educational institute, but repudiation of a parent by a child is recognized as a complete defense to such an order." *Kahn v. Baker*, 36 N.E.3d 1103, 1112 (Ind. Ct. App. 2015) (citing Ind. Code § 31-16-6-2(a)(1) and *McKay*, 644 N.E.2d at 166), *trans. denied*.[3] "Repudiation is defined as a child's complete refusal to participate in a relationship with his parent." *Cunningham*, 139 N.E.3d at 1088. "In determining whether a child has repudiated a parent, the trial court's focus is on the child's actions after reaching the age of majority." *Id.* "Just as divorcing parents run the risk of alienating their children, adult children who willfully abandon a parent must be deemed to have run the risk that such a parent may not be willing to underwrite their educational pursuits." *McKay*, 644 N.E.2d at 167 (quoting *Milne v. Milne*, 556 A.2d 854, 865 (Pa. Super. Ct. 1989), *appeal denied*).

> By college age, children of divorced parents must be expected to begin to come to terms with the reality of their family's situation. They must begin to realize that their attitudes and actions are their individual responsibilities. Whatever their biases and resentments, while one can understand how they got that way,

---

[3] Because repudiation is a defense to an educational support order, Father had the burden of proof on that issue, contrary to what Father asserts in his brief. *See Cunningham*, 139 N.E.3d at 1089 ("Although Mother carried the burden of proof on her petition [for college expenses], Father had the burden of proof on his repudiation defense to show that Children had repudiated their relationship with him ….").

when they become adults it is no longer appropriate to allow them to stay that way without consequence.

*Id*. (quoting *Milne*, 556 A.2d at 861).[4]

[7] "A trial court's decision to deny college expenses is reviewed for an abuse of discretion." *Lovold v. Ellis*, 988 N.E.2d 1144, 1149 (Ind. Ct. App. 2013). "An abuse of discretion occurs when a trial court's decision is against the logic and effect of the facts and circumstances before the court or if the court has misinterpreted the law." *Id*. at 1150. "When reviewing a decision for an abuse of discretion, we consider only the evidence and reasonable inferences favorable to the judgment." *Id*. "[T]his court will affirm a trial court's decision regarding repudiation as long as there is evidence in the record that supports it." *Id*. at 1151.

[8] There is ample evidence in the record that supports the trial court's finding of repudiation in this case. Mother actively thwarted Father's relationship with Daughter during her childhood, and when Daughter became an adult, she took no steps to rekindle it. At the July 2017 hearing, Daughter claimed that she had unsuccessfully attempted to call Father, but she did not testify as to how recently or how often, and the trial court was not obligated to credit her testimony in any event. Father had received no information from Daughter

---

[4] These excerpts from *McKay* refute Mother's assertion that "the burden is upon the parent" to repair his relationship with his child. Appellant's Br. at 13.

regarding her college education and was not willing to help pay for it at that time, but he expressed an interest in renewing their relationship. Over the next three years, however, Daughter made absolutely no effort to do so. Based on the foregoing, we cannot conclude that the trial court abused its discretion in finding that Daughter repudiated her relationship with Father. Therefore, we affirm its denial of Mother's motion for college expenses.

[9] Affirmed.

Najam, J., and Riley, J., concur.