

**FILED**

Jan 25 2019, 8:39 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Robert J. Palmer
May Oberfell Lorber
Mishawaka, Indiana

ATTORNEY FOR APPELLEE

Laura M. Longstreet
South Bend, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Thomas Virgil Messner,

*Appellant-Petitioner,*

v.

Dawn Marie Messner,

*Appellee-Respondent.*

January 25, 2019

Court of Appeals Case No.
18A-DR-1110

Appeal from the St. Joseph Circuit
Court

The Honorable John Broden,
Judge

Trial Court Cause No.
71C01-1408-DR-566

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Petitioner, Thomas Messner (Father), appeals from the trial court's Order granting the request of Appellee-Respondent, Dawn Messner (Mother), to be relieved from financial contribution for the post-secondary educational expenses of their daughter, Riley Messner (Riley).

We affirm.

# ISSUES

Father presents two issues on appeal, which we restate as:

(1) Whether the trial court assessed the evidence of repudiation pursuant to the correct legal standard; and

(2) Whether the evidence supported the trial court's determination that Riley repudiated her relationship with Mother.

# FACTS AND PROCEDURAL HISTORY

Mother and Father have two children born of their marriage, Riley, born on October 31, 1998, and a younger son. Mother also has a daughter, Taylor, from a previous marriage. Father and Mother separated in June of 2014 when Father was presented with proof of Mother's infidelity. Father filed for dissolution of the marriage on August 8, 2014. After the separation, Mother's relationship with Riley became strained, but the two remained in contact throughout 2014. Sometime in 2014, Father and the children met with Mother in a restaurant and gave her an ultimatum that she must end her relationship

with her new partner if she wished to have any future relationship with her children. Mother did not accept that ultimatum. Attempts at family counseling to improve the relationship between Mother and her children failed when Riley ended the last session by walking out.

[5] Mother and Riley communicated in 2015 mainly through texts and through Taylor as an intermediary. Most of the texts were initiated by Mother. Mother gave Riley gifts for major holidays and her birthday. Riley did not acknowledge these gifts or respond to Mother. Riley did not affirmatively tell Mother that she wanted a relationship with her, and she told her on more than one occasion that she did not wish to have a relationship.

[6] On February 12, 2016, in response to a motion by Mother for temporary joint legal custody and parenting time, the trial court entered an order denying Mother both. The trial court found, after having held an *in camera* interview with Riley and her brother, that there was a "deep, seemingly bottomless rift between the children and Mother." (Appellant's App. Vol. II, p. 36). The trial court found that, because of the children's age, any attempt by the trial court to impose parenting time on them would lead to further resentment of Mother.

[7] Throughout 2016, Mother sent Riley texts and provided gifts to Riley on major holidays and on her birthday. Riley did not respond to these efforts at contact by Mother or acknowledge the gifts. Riley turned eighteen years old on October 31, 2016. Mother continued to text Riley after Riley reached the age of majority, but Mother received no response.

[8] Riley visited several colleges in the Spring of 2017. Mother was not included in any of these visits, nor was she consulted for advice on college selection. Riley graduated from high school on May 26, 2017. Riley did not invite her Mother to her high school graduation or to her graduation party. On August 17, 2017, Father moved the trial court for an order requiring Mother to contribute to Riley's college expenses. In the fall of 2017, Riley began attending college at Azusa Pacific University in California. When Mother learned of this fact during mediation with Father, she texted Riley to procure her address so that she could send her a birthday gift. Riley responded that she did not feel comfortable providing Mother her address and that any gift could be left at Father's house, which Mother did.

[9] On December 18, 2017, the trial court held an evidentiary hearing on Father's motion. Mother testified that she had desired and continued to desire a relationship with Riley. Riley testified that she had no current relationship with Mother. When asked whether she desired a relationship with Mother, Riley responded: "I – I don't not desire . . . I am indifferent." (Transcript Vol. II, pp. 104-05). Riley explained that she was indifferent to Mother because she felt that Mother made no effort to have a relationship with her. Riley was unsure what Mother would have to do to repair their relationship, and she felt that she had to work on forgiving Mother before she could work with Mother on their relationship. When asked if she was ready for a relationship with Mother, Riley responded, "I wouldn't say that I'm not ready. I would say that she isn't ready." (Tr. Vol. II, p. 109). Riley recounted that she and her brother had told

Mother in 2014 that, in order to continue to have a relationship, Mother must discontinue contact with her new partner. Riley felt that it was fair for her to make that request because a mother's children should come before anyone else. Riley did not approve of Mother's new partner because he was significantly younger than Mother, which Riley felt was "disgusting." (Tr. Vol. II, p. 109).

[10] On January 8, 2018, the trial court issued its Order concluding that Riley had repudiated her relationship with Mother. In support of its conclusion, the trial court made the following relevant findings of fact:

> 12. In this case, the evidence is clear that Mother and Riley have no relationship, nor have they had any sort of relationship for at least the last two years. When asked if she wants to have a relationship with Mother, Riley explained that she is "indifferent." Since Riley and Mother stopped communicating meaningfully in 2015, Riley told her mother that she was not welcome to leave a gift for Riley's younger brother's birthday. In 2017, Riley told her mother she was not comfortable providing her address (and that Mother could send any gift in care of Father).

> 13. In both instances where Riley and Mother communicated, it was Mother who initiated the contact. The first contact (involving the brother's birthday gift) was unplanned. The second contact was minimal and does not appear welcoming.

> 14. Father attempts to shift blame for the situation to Mother, arguing that Mother has not made any effort to have a relationship with Riley. The Court finds that assigning blame to Mother is not supported by the evidence. Indeed, Father may be responsible in part for the current state of the relationship between Mother and her children. As an example, after the

parties separated, Father met with Mother *and their two children* at a restaurant to deliver an ultimatum: stop dating the individual Mother had been seeing or else the marriage would end. The Court is quite disturbed that Father involved the children in this effort to give Mother a take-it-or-leave-it offer. Children, regardless of age, should never be put in the position of having to choose one parent over another. Even adult children do not deserve to be used as pawns that way. The Court cannot condemn this tactic strongly enough.

15. The Court finds the evidence that Mother regularly contacted Riley to say hello or wish her well to be credible. The Court also finds the evidence that Riley failed to respond to all but one of those overtures to be credible. Based on the credible evidence in this case, the Court is sadly forced to conclude that Riley has repudiated the relationship with Mother. This is not to say that Mother has been a model parent over the years or even since her contact with the children ended. Riley's repudiation may be entirely understandable. But as the courts have said, it would be unjust to give Riley (and indirectly, Father) the benefit of Mother's financial contribution when Riley has been unwilling to even consider responding to Mother's efforts at outreach.

(Appellant's App. Vol. II, pp. 22-23) (emphasis in original). The trial court ordered that, in light of Riley's repudiation of Mother, Mother was relieved from contributing to Riley's college expenses. On February 7, 2018, Father filed a motion to correct error that the trial court denied on February 9, 2018. On April 11, 2018, the trial court entered its Final Order in this case.

Father now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Standard of Review*

Father contends that the trial court erred when it determined that Riley had repudiated Mother because it applied an incorrect legal standard and because the evidence did not support its findings and conclusions. This court reviews a trial court's denial of college expense contribution for an abuse of discretion. *Lovold v. Ellis*, 988 N.E.2d 1144, 1149 (Ind. Ct. App. 2013). In addition, when a trial court enters findings of fact and conclusions of law, we engage in a two-step analysis. First, we determine whether the findings are supported by the evidence, and we determine whether the findings support the trial court's judgment. *Id.* at 1150. When engaging in this review, we consider only evidence that supports the trial court's judgment, we do not reweigh the evidence, and we do not reassess the credibility of witnesses. *Lechien v. Wren*, 950 N.E.2d 838, 841 (Ind. Ct. App. 2011). It is the appellant's burden to establish that the trial court's findings are clearly erroneous. *Lovold*, 988 N.E.2d at 1150. "Findings are clearly erroneous when a review of the record leaves us firmly convinced a mistake has been made." *Id.* However, we review questions of law *de novo*. *Lechien*, 950 N.E.2d at 841.

## II. *Legal Standard Applicable to Repudiation*

Father contends that the trial court applied an incorrect legal standard in this case because "the trial court focused solely on Riley's actions without considering [Mother's] actions." (Appellant's Br. p. 16). In Indiana, "there is no absolute legal duty on the part of parents to provide a college education for

their children." *McKay v. McKay*, 644 N.E.2d 164, 166 (Ind. Ct. App. 1994). When a child who reaches the age of eighteen repudiates a parent, the parent is allowed to dictate if and how much he or she will contribute to the child's college education. *Id.* (adopting the approach of *Milne v. Milne*, 556 A.2d 854, 856 (Pa. Super. Ct. 1989)). Repudiation is defined as a child's complete refusal to participate in a relationship with his or her parent. *Scales v. Scales*, 891 N.E.2d 1116, 1119 (Ind. Ct. App. 2008). In determining whether a child has repudiated a parent, the trial court's focus is on the child's actions after reaching the age of majority. *Id.* However, the trial court may consider a child's actions which occurred before that age if the conduct continued after the child reached the age of eighteen. *See*, *e.g.*, *Norris v. Pethe*, 833 N.E.2d 1024, 1033 (Ind. Ct. App. 2005) (considering evidence that child's repudiation of father commenced when she was a minor but continued uninterrupted when she reached the age of majority). The rationale for excusing parental contribution upon repudiation was set forth by the *McKay* court as follows:

> By college age, children of divorced parents must be expected to begin to come to terms with the reality of their family's situation. They must begin to realize that their attitude and actions are their individual responsibilities. Whatever their biases and resentments, *while one can understand how they got that way*, when they become adults it is no longer appropriate to allow them to stay that way without consequence.

*McKay*, 644 N.E.2d at 167 (quotation omitted) (some emphasis omitted, some added).

[14] In its Order the trial court cited the correct definition of repudiation, relying on *Kahn v. Baker*, 36 N.E.3d 1103, 1112 (Ind. Ct. App. 2015), *trans. denied*, (Finding 8). The trial court examined this court's decisions in *McKay*, *Norris*, *Lovold*, and *Kahn*, emphasizing the conduct of the child in each case, (Findings 8-11). The trial court then concluded that Riley had repudiated Mother in this case based on Riley's failure to respond to Mother's regular attempts at contact, (Finding 15); Riley's refusal to provide Mother her college address while simultaneously directing Mother's present to Father's home, (Finding 12); and Riley's statement at the evidentiary hearing that she was indifferent to having a relationship with Mother, (Finding 12). These actions and statements on Riley's part occurred after she reached the age of majority. In light of these findings, we conclude that the trial court applied the correct legal standard to the facts of this case.

[15] Father argues otherwise because he contends that the trial court "did not look to whether [Mother] bore some responsibility for the strained relationship between her and not only Riley, but also her other children." (Appellant's Br. p. 18). However, Father acknowledges that the trial court found that Mother had not been a model parent and that Riley's repudiation may be entirely understandable. Father essentially argues that, where both parties share the blame for the deterioration of their relationship, a trial court should not excuse the repudiated parent from contribution towards college expenses.

[16] On appeal, Father acknowledges that no existing Indiana precedent expressly supports his argument. We decline to accept Father's proposed addition to the

body of repudiation jurisprudence. Father's argument might have some merit if there was a presumption of parental contribution towards a child's college expenses; however, no such presumption exists. *See McKay*, 644 N.E.2d at 166. In addition, the rationale for excusing contribution by a parent who has been repudiated, namely that an adult child must stand on her own two feet and accept the reality of her family situation, whatever the child's resentments may be and even if "one can understand how they got that way," would be undermined if we were to accept Father's argument. *Id.* at 168 (quotation omitted). Concluding that the trial court applied the correct legal standard, we affirm the trial court's Order.

### III. *Sufficiency of the Evidence*

[17]   Father also argues that we must reverse the trial court's Order because the evidence did not establish that Riley had completely refused to participate in a relationship with Mother after Riley turned eighteen. As already noted, repudiation is the child's "complete refusal to participate in a relationship with the parent." *Duncan v. Duncan*, 81 N.E.3d 219, 224 (Ind. Ct. App. 2017). This is necessarily a fact-sensitive inquiry. *Kahn*, 36 N.E.3d at 1113.

[18]   Here, a review of the evidence most favorable to the judgment indicates that, after Riley turned eighteen, she did not respond to Mother's continued efforts to contact her. Riley did not acknowledge gifts sent to her by Mother. She did not invite Mother to her high school graduation or to the party celebrating that event. Riley did not include Mother making the decision of where to attend college. Mother was informed of Riley's choice of college during mediation on

Father's request for Mother's contribution to Riley's college expenses. When Mother asked Riley for her college address so that she could send her a birthday present, Riley refused to provide her address to Mother. Riley was willing, however, to accept Mother's gift, as long as it was sent to Father's address. Riley gave her Mother an ultimatum in 2014 that Mother must leave her new partner in order to have a relationship with her. Mother did not leave her new partner, and Riley continued to enforce that ultimatum after she turned eighteen due to her disapproval of Mother's relationship, which she testified at the evidentiary hearing she found "disgusting." (Tr. Vol. II, p. 109). This evidence, which Father does not address on appeal, supports the trial court's determination that Riley repudiated her relationship with Mother after Riley reached the age of majority.

[19] On appeal, Father argues that "the evidence establishes that Riley remains open to a relationship with [Mother]." (Appellant's Br. p. 23). In support of that argument, Father directs us to Riley's testimony at the evidentiary hearing that she had forgiven Mother, she would not say that she is not ready for a relationship with Mother, she denied not desiring to have a relationship with

[20] Mother, and she was simply indifferent to her Mother.[1] However, the trial court heard this evidence. It was within the sound discretion of the trial court

---

[1] In his Reply Brief, Father asserts that this argument is not a challenge to the sufficiency of the evidence supporting the trial court's judgment. We disagree. Inasmuch as Father asserts that indifference cannot be equated to a repudiation as a matter of law, he has failed to develop that argument with adequate citation to legal authority in contravention to Indiana Appellate Rule 46(A)(8)(a).

to weigh these statements against Riley's actions and to find that she had refused to participate in a relationship with Mother. Pursuant to our standard of review, we will not second-guess the trial court's judgment by reweighing that evidence. *See Lechien*, 950 N.E.2d at 841. Given that there was evidence in the record to support the trial court's repudiation determination, which is the only evidence we will consider, we are not firmly convinced that a mistake has been made by the trial court. *See Lovold*, 988 N.E.2d at 1151 (noting that if there is evidence to support the trial court's findings in favor of repudiation, the findings are not clearly erroneous).

# CONCLUSION

[21] Based on the foregoing, we conclude that the trial court applied the correct legal standard in assessing the evidence and that the evidence supported the trial court's determination that Riley repudiated her relationship with Mother.

[22] Affirmed.

[23] Kirsch, J. concurs

[24] Robb, J. concurs in result without opinion