

**ATTORNEY FOR APPELLANT**

Angela Field Trapp
Indianapolis, Indiana

**ATTORNEY FOR APPELLEE**

Tracy M. Weber
Wilkinson Goeller Modesitt
Wilkinson & Drummy, LLP
Terre Haute, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

David Cunningham,

*Appellant-Respondent,*

v.

Penney (Cunningham) Barton,

*Appellee-Petitioner.*

December 26, 2019

Court of Appeals Case No.
19A-DR-1038

Appeal from the Vermillion Circuit
Court

The Honorable Robert M. Hall,
Special Judge

Trial Court Cause No.
83C01-0104-DR-41

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Respondent, David Cunningham (Father) appeals the trial court's award of post-secondary educational expenses (Educational Order) in favor of Appellee-Petitioner, Penney Barton (Mother).

We affirm.

# ISSUES

Father presents four issues on appeal, which we restate as:

    (1)  Whether the trial court's findings of fact and conclusions of law supporting its determination that Children had not repudiated Father were clearly erroneous;

    (2)  Whether the trial court's implicit conclusion that Children had adequate aptitude for post-secondary education was clearly erroneous;

    (3)  Whether the trial court abused its discretion by ordering Father to contribute to Children's educational expenses during a period when Father also had a child support obligation; and

    (4)  Whether the trial court erred when it failed to impute the income of Mother's boyfriend (Boyfriend) to Mother.

# FACTS AND PROCEDURAL HISTORY

Mother and Father married on December 31, 1997. Two children, twin boys Clayton and Colton (collectively, Children), were born of the marriage on

December 5, 1999. Mother and Father separated in January 2001. On June 26, 2001, the trial court entered a decree of dissolution of marriage awarding Mother custody of Children and ordering Father to pay child support. Father voluntarily ceased exercising parenting time with Children in 2004 when they were five years old. Father remarried and had two additional children. On September 26, 2009, by agreement of the parties, Father's child support obligation was increased to $220 per week and was not modified afterwards.

[5] When Children were ten years old, their paternal great-grandmother died. Children were emotionally hurt when Father disallowed them from their great-grandmother's funeral. At the age of ten, Children requested that their surname be changed from Father's to Mother's. There was no contact of any kind between Father and Children until December 31, 2013, when Father telephoned Children seeking to re-establish contact with them. Children, who were then fourteen years old, returned Father's telephone call on January 1, 2014, and told Father that he should not contact them any further and that they wished to have nothing to do with him. Thereafter, there was no communication between Father and Children. Children turned eighteen years old on December 5, 2017.

[6] Children planned to attend Indiana State University (ISU). On February 6, 2018, Mother filed a petition for contribution to post-secondary educational expenses from Father. Both Children had contacts with the criminal justice system prior to graduating high school: Clayton was detained for eighty days for resisting law enforcement, and Colton was placed on probation for spitting

on a law enforcement vehicle. Children were either suspended or expelled from high school in October of their senior year but completed their degrees through online courses. Although they were not permitted to participate in graduation activities, Colton graduated with a GPA of 3.80, and Clayton graduated with a GPA of 3.30.

[7] On May 24, 2018, Father filed a motion for emancipation and termination of child support. On May 29, 2018, the trial court held the first of three hearings on the parties' motions. Clayton testified that he was open to the possibility of a relationship with Father, but that some amends needed to be made by Father. On June 29, 2018, Father filed his Motion to Dismiss Mother's petition for educational expenses.

[8] On August 2, 2018, the trial court held a second hearing on the parties' motions. Clayton had his probation revoked due to a new arrest and served nine days as a result. Colton testified at this second hearing that he would be open to having a relationship with Father, speaking with Father, and meeting his half-siblings. Father testified that he had never had any difficulty in his relationship with Children prior to breaking off contact with them when they were five years old; rather, all his problems had involved Mother. After the conclusion of the August 2, 2018, hearing as the parties were exiting the building, Colton extended his hand to Father and introduced himself. The two shook hands. Father also introduced himself and explained that Mother, not Children, had caused his actions at the time of their great-grandmother's funeral.

[9] On October 12, 2018, the trial court held a third hearing. The Fall 2018 college semester had commenced. Colton was attending Vincennes University (VU) full-time and was living off-campus in an apartment. Clayton was attending Danville Area Community College (DACC) full-time and continued to live at home with Mother. Mother requested that Father contribute $350 per month for Colton's room and board while he attended VU, starting January 2019, after Father's child support obligation was discontinued due to Children turning nineteen years old on December 5, 2018. Mother sought a reimbursement of $254.42 from Father for textbooks she had purchased for Colton from the VU bookstore for use during the Fall 2018 semester. Mother requested a $350 contribution per month from Father for Clayton's room, board, and incidentals also beginning in January 2019 to offset her expenses as Clayton continued to live in her home while attending DACC. Mother requested that, after Children's share of their educational expenses was deducted, based on the parties' respective weekly adjusted incomes as calculated on a child support obligation worksheet, Father pay 66% of the remaining expenses, and Mother pay 34%. On November 2, 2018, the parties submitted proposed findings of fact and conclusions of law to the trial court.

[10] On November 19, 2018, the trial court entered its Order granting Mother's petition for post-secondary educational expenses. The trial court found that Father had abandoned Children voluntarily when they were five years old, never sent Children birthday cards or gifts, only called Children once on the telephone in January 2014, never pursued any parenting time with Children

despite being in court on multiple occasions for child support issues, and had "intentionally not been a part of their lives." (Appellant's App. Vol. II, p. 23). The trial court noted that, even after Colton had shaken his hand after the second hearing, Father had not reached out to Children for additional contact. The trial court made the following additional relevant findings:

> 8. It is clear from the testimony at trial that Father abandoned his children when they were five years old . . . Father is now requesting that this court excuse him from paying for his Children's post-secondary educational expenses due to their non-existent relationship which appears to be created due to his own decisions and not that of Mother or [Children].

> 9. Both Colton and Clayton testified in open court that they are open to establishing a relationship with their Father and are willing to attend counseling. They both acknowledged that Father has voluntarily not been a part of their lives for [thirteen] and a half years, and he only tried to contact them on one occasion in January of 2014 when they were [fifteen][1] years old. [Summarizes Father's lack of involvement in Children's lives]. Father has clearly not given [Children] any opportunity to establish a relationship.

> 10. It is clear from the testimony that [Children] are very hurt that their Father chose not to have any type of a relationship with them and abandoned them [thirteen] and a half years prior.

> * * * *

---

[1] Children were fourteen years old in January 2014.

13. . . . [Summarizing the holding of *Loden v. Loden*, 740 N.E.2d 865, 869 (Ind. Ct. App. 2000), wherein this court found that the child had not repudiated her father despite her lack of response to his overtures at communication when she was eight years old, where she expressed willingness as an adult to communicate with her father by sending him a graduation announcement]. Similar to the case at hand, Father was nonexistent in [Children's] lives. Both Children testified that they are willing to establish a relationship and attend counseling. Colton approached Father after the August 2, 2018[,] hearing and extended his hand. Unfortunately, Father never testified that he was willing to establish a relationship, attend counseling, or even take [Children] out to lunch or subsequently acknowledge Colton's extension of the hand . . . In the case at hand, [Father's] attorney stated on numerous occasions that [Children] have the burden of proving that they have not repudiated their Father. This court finds that [Father's] statement is incorrect in that Father has the burden of proof.

* * * *

16. Indiana case law defines repudiation as "a complete refusal to participate in a relationship with a parent". *Kahn v. Baker*, 35 N.E.3d 1103 (Ind. Ct. App. 2015). In the present case, [Children] cannot participate if the parent is not a willing participant himself. It is clear in this case that Father is the one who repudiated his children, not the other way around.

(Appellant's App. Vol II, pp. 23, 25-27). The trial court ordered Children to each pay one third of their respective educational expenses and that Father and Mother pay the remainder, with Father paying 66% and Mother paying 34%.

[11] On December 19, 2019, Father filed a motion to correct error in which he requested that the trial court impute income to Mother due to Boyfriend's

financial contribution to her household and that the trial court give him a $75 credit for weekly health insurance premiums he allegedly paid for Children. On March 18, 2019, the trial court held a hearing on Father's motion to correct error and ultimately denied Father's motion on April 8, 2019. The trial court found that no newly discovered evidence had been submitted in support of Father's motion to correct error and that the case should not be re-opened for further litigation on issues already decided in its Educational Order.

Father now appeals. Additional facts will be provided as necessary.

# DISCUSSION AN DECISION

## I. *Repudiation*

Father challenges the trial court's conclusion that Children did not repudiate their relationship with him. We review a trial court's order for college expense contribution for an abuse of discretion. *Messner v. Messner*, 118 N.E.3d 64, 68 (Ind. Ct. App. 2019), *trans. denied*. When a trial court enters findings of fact and conclusions of law supporting a determination of whether a child repudiated a parent, we engage in a two-step analysis. *Id*. First, we determine whether the findings are supported by the evidence, and then we determine whether the findings support the trial court's judgment. *Id*. We consider only the evidence that supports the trial court's determination. *Id*. We do not reweigh the evidence, neither do we reassess the credibility of the witnesses. *Id*. "It is the appellant's burden to establish that the trial court's findings are clearly erroneous." *Id*. Findings are 'clearly erroneous' if a review of the record leaves

us firmly convinced that a mistake has been made. *Id*. In addition, we review questions of law on a *de novo* basis. *Id*.

[14] A trial court may enter an educational support order for a child's post-secondary education. Ind. Code § 31-16-6-2(a)(1). However, in Indiana, "there is no absolute legal duty on the part of parents to provide a college education for their children." *McKay v. McKay*, 644 N.E.2d 164, 166 (Ind. Ct. App. 1994). When a child who reaches the age of eighteen repudiates a parent, the parent is allowed to dictate if and how much he or she will contribute to the child's college education. *Id*. (adopting the approach of *Milne v. Milne*, 556 A.2d 854, 856 (Pa. Super. Ct. 1989)). Repudiation is defined as a child's complete refusal to participate in a relationship with his parent. *Lechien v. Wren*, 950 N.E.2d 838, 842 (Ind. Ct. App. 2011). In determining whether a child has repudiated a parent, the trial court's focus is on the child's actions after reaching the age of majority. *Scales v. Scales*, 891 N.E.2d 1116, 1119 (Ind. Ct. App. 2008). This court has reasoned that we do not consider pre-majority attitudes and behavior of children, "as we all recognize that the maturity and restraint which can be expected of adults is not appropriately applied to evaluate children." *McKay*, 644 N.E.2d at 167. The court has stated that the rationale for the defense of repudiation as follows:

> We will not provide [a child who has repudiated his parent] with the means of inflicting yet another blow to a parent who has already suffered the deeply painful rejection of his or her child. Just as divorcing parents run the risk of alienating their children, adult children who willfully abandon a parent must be deemed to have run the risk that such a parent may not be willing to

underwrite their educational pursuits. Such children, when faced with the answer 'no' to their requests, may decide to seek the funds elsewhere; some may decide that the time is ripe for reconciliation. They will not, in any event, be allowed to enlist the aid of the court in compelling that parent to support their educational efforts unless and until they demonstrate a minimum amount of respect and consideration for that parent.

*Id.* (quoting *Milne*, 556 A.2d at 865).

[15] Father argues that the trial court erred when it "placed the burden on Father to have a relationship with the adult children, and incorrectly found that [Children] did not [repudiate] their relationship with Father[.]" (Appellant's Br. p. 13). As an initial matter, we address Father's two-sentence argument that the trial court applied an incorrect legal standard to this case because it found in the Educational Order that "'Father has the burden of proof,'" a finding the trial court made in the context of Father's argument at trial that Children bore the burden to show that they did not repudiate Father. (Appellant's Br. p. 16). Mother filed a petition seeking Father's contribution for Children's college expenses, and Father raised the defense of repudiation seeking to avoid that contribution. *See Lovold v. Ellis*, 988 N.E.2d 1144, 1150 (Ind. Ct. App. 2013) (recognizing that repudiation of a parent by a child is a complete defense to an educational support order). Although Mother carried the burden of proof on her petition, Father had the burden of proof on his repudiation defense to show that Children had repudiated their relationship with him, and, thus, the trial court's finding was not an incorrect application of the law.

[16] Father also argues that the trial court incorrectly focused on his actions toward Children rather than focusing on whether the evidence showed that Children had repudiated their relationship with him after they turned eighteen. However, in the Educational Order, the trial court correctly cited the law of repudiation and the legal standard set forth in *McKay* "whereby it is the actions of the child as an adult, over the age of eighteen years, which [are] controlling." (Appellant's App. Vol. II, p. 24). The trial court's determination that Children had not repudiated Father was based upon its conclusion that, despite the fact that Children were hurt by Father's choice to abandon them when they were five years old, they testified in open court that they were open to having a relationship with Father. Specifically, Clayton testified that he was open to the possibility of having a relationship with Father but that amends would have to be made. Colton also testified that he would be open to a relationship with Father, open to speaking to him, and open to meeting his half-siblings. In addition, in a spontaneous action which the trial court found significant, Colton had shaken Father's hand after the second hearing in this matter.

[17] We will affirm the trial court's repudiation decision "as long as there is evidence in the record that supports it." *Lovold*, 988 N.E.2d at 1151. In light of Children's in-court testimony and out-of-court conduct, there was evidence in the record to support the trial court's repudiation decision. Although the trial court entered findings regarding Father's actions toward Children, both before and after they turned eighteen, these findings explained Children's attitude toward Father and placed the absence of other evidence of Children's desire to

have a relationship with Father into the historic context of the case. The trial court's findings regarding Father's conduct illustrate that this is not a case where Children sought "the means of inflicting yet another blow to a parent who has already suffered the deeply painful rejection of his or her child." *McKay*, 644 N.E.2d at 167.

[18] Father claims otherwise, arguing that two of the trial court's findings were not supported by the record. First, Father challenges the trial court's finding that he "basically continually rejected the Children for a long period of time and demonstrated no willingness to have a relationship with them" as being unsupported by the record. Father contends the evidence showed that Mother thwarted his efforts to contact Children, he wanted Children to attend their great-grandmother's funeral, his failure to maintain a relationship with Children was due to difficulties with Mother, not with them, and because he had contacted them on December 31, 2013, only to be told by Children on January 1, 2014, they did not wish to have contact with him.

[19] We do not find Father's arguments to be persuasive. Father testified repeatedly at the hearings that he voluntarily walked away from Children when they were five years old. The evidence also showed that Father never pursued any court assistance to procure parenting time with Children despite being in court multiple times on child support matters, Children were not allowed to attend their great-grandmother's funeral, and that Father's only attempt at contact with Children was the December 2013 telephone call nine years later when Children were fourteen years old and were hurt by Father's long-term rejection.

This was the evidence that supported the trial court's finding, and it is the only evidence which we consider on appeal. *See Messner*, 118 N.E.3d at 68. Father essentially attempts to re-argue his case to us after the trial court heard and rejected the same arguments, which is not persuasive given our standard of review. *Lovold*, 988 N.E.2d at 1151.

[20] Father also challenges the evidence supporting the trial court's finding that Father never testified that he was willing to establish a relationship with Children. This finding was in the context of the parties' testimony and actions at the time of the evidentiary hearings in this matter and was meant to contrast with Children's explicit testimony regarding their current openness to having a relationship with Father. Father does not direct us to any portion of the record wherein he explicitly testified that he currently wished to have a relationship with his adult sons, and, therefore, we conclude that this finding was also supported by the record.

[21] Father maintains that the facts of this case are "identical" to those in *Lovold v. Ellis*, 988 N.E.2d 1144 (Ind. Ct. App. 2013), wherein this court upheld the trial court's finding that the child had repudiated his relationship with his father. (Appellant's Br. p. 18). In *Lovold*, the father did not see his child for eight years, the child made no effort to communicate with the father about grades, activities, health, or college plans even after his eighteenth birthday, the child avoided his father when he saw him in public and was non-responsive to a request for contact after the filing of the college expense petition. *Id*. at 1151. The child claimed at the hearing on the petition that he wished to have a

relationship with his father, but the trial court found the child's testimony to be disingenuous. *Id.* We find *Lovold* to be distinguishable based on this factor. Here, the trial court apparently determined that Children's current willingness to have a relationship with Father was genuine. This involved an assessment of Children's credibility, and we do not second-guess those assessments as part of our review. *See Messner*, 118 N.E.3d at 68. Because the trial court correctly focused on Children's actions after they reached adulthood and the evidence supported its conclusion that they did not repudiate Father, we conclude that the trial court's Educational Order denying Father's repudiation defense was not clearly erroneous.

## II. *Aptitude for Post-secondary Education*

[22] Father argues that the trial court "failed to adequately look into each child's aptitude for the education they were seeking to obtain[.]" (Appellant's Br. p. 20). Indiana Code section 31-16-6-2(a)(1)(A) provides that a trial court may enter an order for post-secondary education expenses based upon a "child's aptitude and ability[.]" Our review of the record does not reveal that this was a contested issue at the hearings in this matter, and, because Father did not include his proposed findings of fact and conclusions of law in his Appendix, we are unable to determine if he requested that the trial court enter specific findings regarding Children's aptitude for post-secondary education. The trial court did not enter any specific findings addressing this issue, but its grant of Mother's petition is an implicit finding that Children had sufficient aptitude.

Thus, we will examine the record to determine if the trial court's implicit finding was supported.

[23] In *Neudecker v. Neudecker*, 566 N.E.2d 557, 560 (Ind. Ct. App. 1991), the trial court entered an educational support order providing for a contribution by father. Father argued on appeal that there was no evidence demonstrating his daughter's aptitude and ability for higher education to support an award of post-secondary educational expenses. This court held that sufficient evidence existed in the record to support a finding of aptitude and ability where daughter had applied to, been accepted by, and was enrolled in a post-secondary educational institution. *Id.*

[24] Here, at the time of the filing of the petition, Children had applied and been accepted by ISU. By the time of the third hearing, Clayton was attending DACC, and Colton was attending VU. Following *Neudecker*, we conclude this was sufficient evidence of Children's aptitude and ability. In addition, both Children graduated from high school, with GPAs of 3.80 and 3.30. Father's contentions that Children struggled in school and had contacts with the criminal justice system amount to another invitation to us to disregard our standard of review and to consider evidence that does not support the trial court's Educational Order. *See Messner*, 118 N.E.3d at 68. We decline that invitation.

A. *Simultaneous Orders*

[25]     Father next argues that the trial court "erred by ordering post-secondary educational back support without giving Father credit for paying the maximum amount of child support during the same period of time[.]" (Appellant's Br. p. 21). The gravamen of Father's argument on this issue is that the trial court lacked statutory authority to order him to pay educational expenses for the Fall of 2018 because he was still paying child support until December 5, 2018, when his support obligation ceased due to Children turning nineteen.

[26]     Father's argument is misplaced. As he acknowledges on appeal, Indiana Code section 31-16-6-2(b) provides as follows:

> If the court orders support for a child's educational expenses at a postsecondary educational institution [], the court shall reduce other child support for that child that:
>
> (1) is duplicated by the educational support order; and
>
> (2) would otherwise be paid to the custodial parent.

Nothing in the statute restricts a trial court from ordering a parent to pay child support and educational expenses for the same time period. Indeed, the statute explicitly provides for simultaneous educational expense and child support orders but provides that a parent's child support obligation will be reduced for expenses that are also provided for in the educational support order. Father offers no legal authority for his proposition that the trial court could not order

him to pay any educational expenses for the Fall of 2018 that were not covered by his current child support obligation simply because he was current on his child support, and our own research failed to uncover any such legal authority. Therefore, we find no abuse of the trial court's discretion.

[27] In addition, for the Fall 2018 semester when Father's child support obligation was still active, the trial court ordered Father to pay his share of Colton's textbook expenses and Clayton's tuition and textbook expenses, all of which had already been paid for by Mother. The Educational Order did not include any room, board, or miscellaneous living expenses allotment for Children for the Fall of 2018. The trial court only ordered Father to pay his proportional share of room, board, and miscellaneous living expenses for Children beginning January 1, 2019, after his child support obligation ceased. Therefore, there were no expenses duplicated in the trial court's Educational Order, and Father was not entitled to a reduction in his child support obligation pursuant to I.C. § 31-16-6-2(b).

### B. *Health Insurance Premium*

[28] In this portion of his multifaceted argument, Father also contends that the trial court erred when it failed to provide him with a $75 credit on the child support obligation worksheet attached to the Educational Order for the health insurance premium he paid weekly for Children. We find no error on the part of the trial court because the child support worksheet attached to the Educational Order was used to calculate the parties' weekly adjusted income for purposes of determining the parties' proportional obligation of the educational expenses,

not for purposes of recalculating Father's child support obligation, which ceased on December 5, 2018. A credit for a health insurance premium would not affect the calculation of the parties' proportional obligation for educational expenses, and, therefore, there was no reason for the trial court to include it.

[29] Inasmuch as Father argues that he was entitled to a reduction in his child support obligation prior to December 5, 2018, based on this proposed credit, the record is bereft of any evidence that Father requested a reduction in his child support obligation for any reason. Father did not file a formal petition to modify child support; Father did not have a modified child support worksheet admitted into evidence at any of the three hearings in this matter; Father did not include his proposed findings of fact and conclusions of law in his Appendix, so we assume that no modified child support demand or worksheet was included; and Father did not argue in his closing remarks at the final hearing in this matter on October 12, 2018, that he was entitled to the proposed credit. Father did submit a child support obligation worksheet at the hearing on his motion to correct error that included the proposed credit, but it is well-established that arguments raised for the first time in a motion to correct error are waived on appeal. *Troxel v. Troxel*, 737 N.E.2d 745, 752 (Ind. 2000). Father does not argue on appeal that he was unaware of his payment of Children's health insurance premium at the time of the hearings on the parties' motions. Father was aware of the payment but did not bring it to the trial court's attention in a timely manner. Thus, we decline to address the issue.

## C. *Additional Findings*

[30] Father also challenges the sufficiency of the evidence supporting two findings related to amounts awarded by the trial court in the Educational Order. As noted above, in evaluating the evidence supporting a trial court's educational order, we consider only the evidence that supports the trial court's order and will only reverse if that order is clearly erroneous. *Carson v. Carson*, 875 N.E.2d 484, 485-86 (Ind. Ct. App. 2007).

[31] Father asserts that the record did not support the trial court's order that he reimburse Mother $254.42 for Colton's textbook expenses because the evidence submitted by Mother did not adequately connect that expense to her payment. Our review of the record revealed that Mother submitted Exhibit 22 into evidence at the October 12, 2018, hearing. Mother identified Exhibit 22 as her Credit One credit card statement showing purchases at the VU bookstore for books and a parking pass fee. Mother verified that the exhibit was her credit card statement and that she paid for those expenses using that card. Father does not address this evidence or explain why it is insufficient to support the trial court's findings.[2] We find that this testimony and Exhibit 22 adequately links the textbook expenses to Mother's payment.[3]

---

[2] The exhibit referenced by Father in support of his argument, Exhibit 20, pertains to textbook expenses for Clayton, not Colton. Mother requested a $178.39 reimbursement for Clayton's textbooks.

[3] In developing his argument that this portion of the trial court's Educational Order was unsupported by the evidence, Father cites "*Id*. at 937." (Appellant's Br. p. 23). However, Father's previous legal citation was to *Cobb v. Cobb*, 588 N.E.2d 571, 575 (Ind. Ct. App. 1992).

[32] Father also challenges the evidence supporting the trial court's inclusion of $2,298.00 for "Other" expenses as part of the calculation of Children's education costs on the post-secondary education worksheets attached to the Educational Order. Father asserts that the trial court did not adequately explain how it derived that figure, an argument which we take to be a challenge to the sufficiency of the evidence. We find Father's argument to be unavailing, as Mother had admitted into evidence Exhibit 6, which she identified as a document showing the 2018 costs of attendance at ISU. Exhibit 6 was admitted into evidence without objection by Father and appears to be a printout from an ISU website. Mother identified the costs of "other expenses" as $2,298.00, which corresponded to the amount for that item on the 2018 costs listed in Exhibit 6. Mother testified that the amounts from Exhibit 6 were used to complete her post-secondary educational worksheet, including the amounts for tuition, room and board, and miscellaneous expenses included in the worksheet. Mother identified those miscellaneous expenses as including extra food, dorm room items, spending money, toiletries, and cell phones, which totaled $2,298.00, and which she requested be divided over the ten-month college year. In light of this evidence, we cannot conclude that the trial court's inclusion of $2,298.00 for "Other" expenses was without support in the record or that it was clearly erroneous. *See Carson*, 875 N.E.2d at 485-86.

## IV. *Failure to Impute Boyfriend's Income to Mother*

[33] Father's final challenge to the Educational Order is that the trial court erred when it failed to impute Boyfriend's income to Mother for purposes of

computing her weekly adjusted income and her proportional share of Children's educational expenses. Our review of the record reveals that Father did not pursue this issue at the three hearings on the parties' motions: Father developed no detailed evidence regarding Boyfriend's income, Boyfriend's expenses, or how Boyfriend specifically contributed financially to Mother's home. Father did not submit any proposed child support obligation or educational expense worksheets imputing Boyfriend's income to Mother, nor did he offer any argument at the closing of the evidence regarding imputed income. Instead, Father raised the issue of imputing Boyfriend's income to Mother for the first time in his motion to correct error. We agree with Mother that this issue was not properly preserved and is waived for our review because Father failed to raise it until he pursued his motion to correct error. *See Troxel*, 737 N.E.2d at 752. Therefore, we do not address it.

## CONCLUSION

[34] Based on the foregoing, we conclude that the trial court's determination that Children had not repudiated Father and that Children had adequate aptitude for post-secondary education were not clearly erroneous, the trial court did not abuse its discretion by ordering Father to pay non-duplicative educational expenses during the same period he had a child support obligation, and that the amount of the educational expenses it ordered was supported by the record. We also conclude that Father waived his claim of imputed income by failing to raise it until his motion to correct error.

[35] Affirmed.

Baker, J. and Brown, J. concur