


FILED

Dec 30 2025, 9:06 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

In re: the Marriage of:

Kevin Weinzapfel,

*Appellant-Respondent*

v.

Melissa Weinzapfel,

*Appellee-Petitioner*

---

December 30, 2025

Court of Appeals Case No.
25A-DR-1102

Appeal from the Vanderburgh Superior Court

The Honorable Mary Margaret Lloyd, Judge

Trial Court Cause No.
82D05-1507-DR-905

---

**Opinion by Judge May**
Chief Judge Altice and Judge Foley concur.

**May, Judge.**

Kevin Weinzapfel ("Father") appeals the trial court's order modifying his child support obligation and requiring him to pay a portion of the post-secondary educational expenses for his adult son, Caden Weinzapfel ("Caden").[1] He presents multiple issues for our review, which we reorganize and restate as:

> 1. Whether the trial court erred when it credited Father for ninety-eight parenting time overnights with Caden, N.W., and C.W. ("Children");
>
> 2. Whether the trial court erred when it found that Caden did not repudiate his relationship with Father; and
>
> 3. Whether the trial court abused its discretion when it assigned the Child of Disabled Veteran Award (the "CDV Benefit") to Caden's portion of his post-secondary education expenses.

We affirm in part, reverse in part, and remand.

## Facts and Procedural History

Father and Melissa Weinzapfel ("Mother") (collectively, "Parents") are the parents of Caden, born December 2005; N.W., born February 2008; and C.W., born September 2010. Parents divorced on September 19, 2016. In the dissolution order (the "2016 Dissolution Order"), the trial court ordered Parents to exercise joint legal custody and 50/50 physical custody. The marital debt at the time of the 2016 Dissolution order was approximately $72,000. The trial

---

[1] "Caden" is also spelled "Cayden" in several places in the record. (*See, e.g.*, Appellant's App. Vol. II at 84.) We will use the spelling indicated in the trial court's order.

court ordered Father to pay $72.50 per week in child support, which was lower than recommended by the Indiana Child Support Guidelines. It explained that "[b]ecause he is paying the vast majority of the [marital] debts, [Father's] child support obligation . . . is established at a lower level, as a deviation, which the Court finds just and proper given his assumption of the majority of marital debt." (Appellant's App. Vol. II at 10.) The trial court modified Father's child support obligation in November 2017 (the "2017 Modification Order") when it approved the parties' agreement to lower the amount to $60 per week.

[3] Starting in April 2023, the parties filed several competing motions for modification of child custody and related matters. On December 13, 2023, the trial court issued an order finding, in part, that Parents were not effectively co-parenting and directing Parents and Children to attend therapy with Jarred[2] Kelley "until the family's treatment goals are met." (*Id*. at 78.)

[4] During the 2023-2024 school year, Caden was a senior in high school. He discussed college plans with Parents, who had access to a website tracking his college applications. Father added schools to the list and Caden included Father's email for information related to his applications. Father also provided information needed for Caden to complete documents required for financial aid.

---

[2] "Jarred" is also spelled "Jared" elsewhere in this order. (*See* Appellant's App. Vol. II at 78.)

[5] Caden turned eighteen years old in December 2023. In February 2024, Father and Caden had an altercation involving Caden's girlfriend. Shortly thereafter, Caden sent Father a text message stating that he did not "believe you [Father] have the right to ever speak to any woman especially my girlfriend, in the manner you did. I'm not sure yet if or when I'll come back." (Ex. Vol. II at 118.) Father responded by denying inappropriate conduct, telling Caden he had "issues with respect," and instructing him to make an appointment with family therapist Kelley. (*Id*.) From February 2024 to May 2024, Caden did not communicate with Father and stopped attending parenting time with Father.

[6] On May 8, 2024, Mother filed a petition to modify child support and a request for a post-secondary education order, asking the trial court to, in part, require Parents to complete a post-secondary worksheet to determine the distribution of costs for Caden's post-secondary education. On May 23, 2024, Caden sent Father a text message and invited Father to his graduation ceremony, stating, "I would really like you to come." (Appellant's App. Vol. II at 97.) Father attended Caden's graduation ceremony. On June 15, 2024, Caden sent a text message asking Father if he had Father's Day plans, and Caden visited Father later that evening.

[7] In the summer of 2024, Caden enrolled in Indiana University-Indianapolis. Caden sent Father information about his college orientation and Mother sent Caden's "current enrollment verification certificate" to Father via Our Family Wizard. (Tr. Vol. II at 52.) On August 2, 2024, Caden sent a text message to Father to wish him a happy birthday and stated, "I love ya[.]" (Ex. Vol. II at

122) (errors in original). Father responded, "I love you too" and asked Caden about college orientation. (*Id*.)

[8] On September 3, 2024, Caden sent Father a text message to ask if he could visit Father for the weekend. Father did not respond for over twenty-four hours, then declined and suggested they engage in therapy first. Father testified he knew their court date was approaching and had consulted his attorney about "repudiation." (Appellant's App. Vol. II at 97.) Father did not invite Caden to Thanksgiving, Christmas, or a family vacation in Florida.

[9] On January 14, 2025, Father filed a motion to emancipate Caden. The next day, he filed an "Amended Motion to Emancipate [Caden] and Show Repudiation." (*Id*. at 93.) In that motion, he alleged Caden "has not had a relationship with [Father] since this Court's last order [in December 2023]. . . Father was not consulted or contacted concerning attendance at Indiana University or costs." (*Id*.)

[10] On February 28, 2025, the trial court held a hearing on Mother's May 2024 motion and Father's January 2025 motion. Regarding child support, as part of his child support worksheet, Father requested the trial court credit him for 183 overnights for the purposes of calculating child support. In Mother's child support worksheet, she asked that the trial court credit Father for 184 overnights. At the time of the hearing, Father had paid approximately $24,951 of the $72,000 in marital debt. The remaining $47,049 consisted of Father's student loan, which had been in forbearance since July 2024.

[11] As indicated on Mother's post-secondary education expenses worksheet, Caden's total annual costs for his tuition and related expenses at Indiana University-Indianapolis were $28,447. She told the trial court that Caden received $3,000 in scholarships and $10,760 from the CDV Benefit. He also took out $5,444 in student loans. Mother took out a Parent PLUS loan of $9,243 to cover the remaining tuition and related fees. Father made no contribution to the costs of Caden's freshman year.

[12] Father testified that he was not responsible for Caden's post-secondary education expenses because Caden had repudiated his relationship with Father. Father told the trial court about the communication between him and Caden from May 2024 to December 2024, and stated he believed Caden's text messages in September 2024 were "suspicious" and "odd" because he felt Caden was contacting him to "avoid . . . repudiation." (Tr. Vol. II at 22.) When asked if he thought Caden wanted to have a relationship with him, Father answered, "I hope so. I don't know." (*Id*. at 29.)

[13] Caden testified regarding his text message exchanges with Father. He told the trial court he wanted to have a relationship with Father, and he was "willing to try anything" to repair his relationship with Father. (*Id*. at 94.) Kelley, the family's therapist, testified that after reviewing the text messages from September 2024, that "it seems as [if] Caden's still trying to reach out for the relationship." (*Id*. at 72.)

[14]     On April 7, 2025, the trial court issued its order denying Father's motion to emancipate Caden and show repudiation and granting Mother's motion to modify child support and request for post-secondary education expenses. It ordered Father to pay child support using a parenting time credit of ninety-eight overnights with Children and did not decrease Father's child support obligation based on his assumption of the marital debt as it had in the 2016 Dissolution order and the 2017 Modification Order. Additionally, the trial court ordered Caden to be responsible for one-third of his college costs, with Mother paying 35% and Father paying 65% of the remaining costs.[3] The trial court denied Father's request "that [the CDV Benefit] be his sole educational cost contribution" for Caden's post-secondary education and instead attributed that amount to Caden's portion of the expenses. (Appellant's App. Vol. II at 99.)

## Discussion and Decision

### 1. Child Support Modification

Father challenges the modification of his child support obligation. We generally "grant[] latitude and deference to the trial court in family law matters." *Hurst v. Smith*, 192 N.E.3d 233, 242 (Ind. Ct. App. 2022) (quoting *Steele-Giri v. Steele*, 51 N.E.3d 119, 124 (Ind. 2016)). "[T]he trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it

---

[3] The trial court ordered Father to pay 70% of the parental portion of Caden's post-secondary expenses for his upcoming junior year. The trial court found the "adjustment on the parental portion equalizes the fact that [Mother] paid all of the parental portion without any assistance from [Father] during Caden's freshman year." (Appellant's App. Vol. II at 99.)

came from the witness stand, did not properly understand the significance of the evidence." *Id*. (quoting *Steele-Giri*, 51 N.E.3d at 124). On appeal, we do not "reweigh the evidence nor reassess witness credibility, and the evidence should be viewed most favorably to the judgment." *Id*. (quoting *Steele-Giri*, 51 N.E.3d at 124).

[15] When we review a trial court's modification of child support,

> [a] trial court's calculation of child support is presumptively valid. Upon the review of a modification order, only evidence and reasonable inferences favorable to the judgment are considered. The trial court's order will be set aside only if it is clearly erroneous. Clear error is error that leaves us with a definite and firm conviction that a mistake has been made.

*DeGrado v. DeGrado*, 243 N.E.3d 381, 387 (Ind. Ct. App. 2024) (internal quotations and citations omitted). Here, the parties did not request findings pursuant to Indiana Trial Rule 52, and thus the trial court entered findings sua sponte. Our standard of review for sua sponte findings and conclusions is well-settled:

> Where the trial court enters specific findings sua sponte, the findings control our review and the judgment only as to the issues those specific findings cover. Where there are no specific findings, a general judgment standard applies, and we may affirm on any legal theory supported by the evidence adduced at trial.
>
> A two-tier standard of review is applied to the sua sponte findings and conclusions made: whether the evidence supports the findings, and whether the findings support the judgment. Findings and conclusions will be set aside only if they are clearly

erroneous, that is, when the record contains no facts or inferences supporting them.

*Williams v. Cardona-Feliciano*, 245 N.E.3d 626, 634 (Ind. Ct. App. 2024) (internal citations omitted).

[16] Father contends the trial court erred when, in its calculation of child support, it credited him with only 98 parenting overnights with Children.[4] Pursuant to Indiana Child Support Guideline 6, when, as is the case here, parents share 50/50 custody, "[p]arenting time is considered equally shared when it is 181 to 183 overnights per year." In Mother's motion to modify child support, she included a proposed child support worksheet[5] that credited Father for 184 overnights with Children. As part of his child support worksheets presented to the trial court, Father asked for parenting time credit for 183 overnights.[6]

[17] In its order, the trial court stated that Father was "given credit for 98 days of parenting time for all three (3) of the minor children[7] and adjustment for his subsequent born child." (Appellant's App. Vol. II at 100) (footnote added).

---

[4] While a portion of the trial court's child support order includes Caden, that obligation expired when Caden turned nineteen years old.

[5] One of Mother's child support worksheets includes Caden and the other two do not. Regardless, she asked the trial court to credit Father with 184 overnights.

[6] Father's child support worksheets do not include Caden. However, his parenting time credit request was still 183 overnights for N.W. and C.W.

[7] Even though the trial court stated that it would credit Father ninety-eight parenting time days for all three children, it credited Father for ninety-eight parenting days in all child support modification orders, some of which did not include Caden.

The trial court did not indicate why it deviated from Child Support Guideline 6, which states that parents sharing 50/50 custody should each receive credit for an average of 182 days of parenting time credit. *See* Indiana Child Support Guideline 3 ("If the court concludes from the evidence in a particular case that the amount of the award reached through application of the guidelines would be unjust, the court shall enter a written finding articulating the factual circumstances supporting that conclusion."). Further, the parties agreed that Father was entitled to credit for at least 182 overnights, and there was no evidence to support an amount different than what parents proposed. Because the trial court did not explain the reason for its deviation from the Indiana Child Support Guideline 3 and we have found no evidence to support its decision, we conclude the trial court erred when it gave Father credit for only ninety-eight overnights. *Cf.*, *e.g. Eppler v. Eppler*, 837 N.E.2d 167, 174 (Ind. Ct. App. 2005) (trial court did not err when it credited father for less parenting time than the Guidelines dictated because the trial court explained its reason for the deviation and the record contained evidence that father did not have children ninety-eight days during the relevant time period), *trans. denied*. Therefore, we reverse the portion of the trial court's order regarding Father's child support obligation and remand for recalculation of Father's parenting time credit and support obligation.

[18] Additionally, Father argues that the trial court erred when it did not continue the terms of the 2016 Dissolution Order, in which the trial court reduced Father's child support obligation because Father was assigned the majority of

the marital debt. We note the trial court appears to have continued this reduction based on Father's debt load when it entered the 2017 Modification Order. The trial court's order here did not explain why it decided to discontinue the reduction in child support that Father received in the past, in light of his still carrying two-thirds of the marital debt. Therefore, on remand, we ask the trial court to include a finding to explain to Father why it discontinued the reduction of Father's child support obligation based on his assignment of the majority of the marital debt.

## 2. Repudiation

[19] Father asserts the trial court erred when it found Caden had not repudiated his relationship with Father. "Repudiation is defined as a child's complete refusal to participate in a relationship with his or her parent." *Messner v. Messner*, 118 N.E.3d 64, 68 (Ind. Ct. App. 2019), *trans. denied*. "When a child who reaches the age of eighteen repudiates a parent, the parent is allowed to dictate if and how much he or she will contribute to the child's college education." *Id*. When considering whether a child repudiated their relationship with a parent, "the trial court's focus is on the child's actions after reaching the age of majority." *Id*. "However, the trial court may consider a child's actions which occurred before that age if the conduct continued after the child reached the age of eighteen." *Id*.

[20] Father argues that Caden repudiated his relationship with Father because Caden refused to attend parenting time after the February 2024 incident; did

not invite Father to his graduation until the "last minute[;]" "did not communicate his college choices to Father, regarding his college orientation, give enrollment verification or grades to Father[;]" and "did not give Father is [sic] ability to access financial information at the college[.]" (Father's Br. at 14-15.) Father asserts Caden contacted him "out of the blue" (*id.* at 15) (quotes in original omitted), and Father thought that was odd, considering "Caden indicated that he knew they had court and he had not seen or talked to Father in some time." (*Id.*) Finally, Father states, "Caden admitted that he has not been trying to have a relationship with Father." (*Id.*)

[21] The trial court made several findings supporting its conclusion that Caden did not repudiate his relationship with Father. The trial court found, "Caden wants a relationship [with Father] but does not have the strength to deal with [Father]. Caden showed anxiety [during a session with Kelley] and teared up during his session because he wants a relationship but it hurts not to address issues and he doesn't know what to do." (Appellant's App. Vol. II at 97.) The trial court also found Caden attempted to have a relationship with Father by sending several text messages between May 2024 and September 2024. The text messages included an invitation to his graduation, a request to see Father on Father's Day, birthday wishes to Father, and the desire to see Father on a school break.

[22] Father's argument is an invitation for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do. *See, e.g.*, *Hurst*, 192 N.E.3d at 242 (appellate court cannot reweigh evidence or judge the credibility of witnesses). Therefore, the trial court did not err when it determined that Caden did not

repudiate his relationship with Father. *See*, *e.g.*, *Duncan v. Duncan*, 81 N.E.3d 219, 225 (Ind. Ct. App. 2017) (affirming trial court's finding that daughter did not repudiate her relationship with her father when she tried to have a relationship with father by attempting to visit him and by attending family functions).

## 3. Apportionment of the CDV Benefit

[23] Father argues the trial court abused its discretion when it declined his request to apportion the $10,760 per year CDV Benefit to Father's portion of Caden's post-secondary education expenses. Child Support Guideline 8 provides the award of post-secondary education expenses

> is discretionary with the court to award post-secondary educational expenses and in what amount. In making such a decision, the court should consider post-secondary education to be a group effort, and weigh the ability of each parent to contribute to payment of the expense, as well as the ability of the student to pay a portion of the expense.

Further, pursuant to Indiana Child Support Guideline 8(b):

> If the court determines that an award of post-secondary educational expenses is appropriate, it should apportion the expenses between the parents and the child, taking into consideration the incomes and overall financial condition of the parents and the child, education gifts, education trust funds, and any other education savings program. The court should also take into consideration scholarships, grants, student loans, summer and school year employment and other cost-reducing programs available to the student. These latter sources of assistance should be credited to the child's share of the educational expense unless

the court determines that it should credit a portion of any scholarships, grants and loans to either or both parents' share(s) of the education expense.

"[I]t [is] within the trial court's discretion to credit the scholarships and grants" to a child's share of their post-secondary expenses instead of to their parents' share. *Schacht v. Schacht*, 892 N.E.2d 1271, 1279 (Ind. Ct. App. 2008).

[24] The CDV Benefit is a "Tuition and Fee Exemption for Children of Disabled Veterans or Purple Heart Recipients [that] provides up to 100% of tuition and regularly assessed fees for up to 124 semester credit-hours at Indiana public colleges and universities at the undergraduate resident tuition rate." *Indiana Commission for Higher Education, Tuition and Fee Exemption – Children of Disabled Veterans*, https://www.in.gov/che/state-financial-aid/state-financial-aid-by-program/tuition-and-fee-exemption-children-of-disabled-veterans/ [https://perma.cc/EK3U-BGPG]. A person applying for the CDV Benefit must be the child of, as is relevant here, a disabled veteran. *Id*. The student must also "be eligible for the resident tuition rate at the Indiana public college or university where they attend" and "must maintain Satisfactory Academic Progress (SAP) at the Indiana public college or university where they attend." (*Id*.)

[25] Father argues we should attribute the CDV Benefit to his portion of Caden's post-secondary educational expenses because it is the same as his disabled veteran social security income, which the trial court considered when determining his child support obligation. He contends "[p]rinciples of equity

and fairness would suggest that if Father's veteran benefits are being considered his for child support purposes then Father's veteran benefits should also be considered for purposes of determining an educational support." (Father's Br. at 17.) We examined a similar situation involving an almost identical award in *Orlich v. Orlich*, 859 N.E.2d 671, 676 (Ind. Ct. App. 2006). In that case, we decided

> the educational benefit paid by the Veterans Administration to a child of a disabled veteran while the child is enrolled in college 'does not necessarily fall within the same category [as social security payments] - i.e., it is a specialty item available for use only under specified circumstances as distinguished from allotments and social security payments which are generally available for ordinary use.'"

*Id*. (quoting *Thompson v. Thompson*, 254 Ark. 881, 496 S.W.2d 425, 426 (1973)) (brackets in original).

[26] Here, while Caden's eligibility for the CDV Benefit stemmed from Father's status as a disabled veteran, Caden was also required to meet other guidelines such as enrollment in an Indiana state institution and maintenance of satisfactory academic standards. The CDV Benefit is paid directly to the educational institution, as it is a "Tuition and Fee *Exemption*[.]" *Indiana Commission for Higher Education, Tuition and Fee Exemption – Children of Disabled Veterans*, https://www.in.gov/che/state-financial-aid/state-financial-aid-by-program/tuition-and-fee-exemption-children-of-disabled-veterans/ [https://perma.cc/5NLA-V7N8] (emphasis added). As the CDV Benefit is

paid to the educational institution, it is not a social security benefit, which is paid to the recipient for use at their discretion.

[27] The CDV Benefit is more akin to a scholarship. Generally, a scholarship is attributed to the child's portion of the post-secondary education expenses and the trial court has discretion to apportion the scholarship between the parents and child. Indiana Child Support Guideline 8. Therefore, the trial court did not abuse its discretion when it attributed Caden's CDV Benefit to his portion of the post-secondary education expenses. *See, e.g.*, *Schacht*, 892 N.E.2d at 1279 (holding the trial court did not abuse its discretion when it credited the scholarships and grants the daughter received to the daughter's portion of the post-secondary expenses).

## Conclusion

[28] The trial court erred when it gave Father parenting credit of ninety-eight overnights in its calculation of his child support obligation because no evidence existed to support that decision and the trial court did not explain its deviation as required by Indiana Child Support Guideline 6. We remand for the trial court to consider the appropriate number of parenting time overnights or to provide a justification for any deviation. Further, we ask the trial court to explain why it did not reduce Father's child support obligation based on his assumption of the marital debt, as it had in all prior child support orders.

[29] However, the trial court did not err when it determined Caden did not repudiate his relationship with Father and thus Father was responsible for a portion of

Caden's post-secondary expenses. Additionally, the trial court did not abuse its discretion when it credited the CDV Benefit to Caden's portion of college expenses. Accordingly, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

Affirmed, reversed, and remanded.

Altice, C.J., and Foley, J., concur.

ATTORNEY FOR APPELLANT

Katherine N. Worman
Evansville, Indiana

ATTORNEY FOR APPELLEE

Jeff Shoulders
Bob Zoss Law Office, LLC
Evansville, Indiana